**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Amy N. KOCH, Appellant.**

Superior Court of Pennsylvania.

Submitted July 18, 2011.

Filed Sept. 16, 2011.

Reargument Denied Nov. 22, 2011.

Michael O. Palermo, Jr., Carlisle, for appellant.

Matthew P. Smith, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

BEFORE: BOWES, FREEDBERG, and COLVILLE,* JJ.

OPINION BY BOWES, J.:

Amy N. Koch appeals the July 20, 2010 judgment of sentence of twenty-three months probation imposed following her

* Retired Senior Judge assigned to the Superior Court.

conviction of possession with intent to deliver ("PWID") (marijuana) and possession of a controlled substance (marijuana) as an accomplice. After careful review, we reverse and remand for a new trial.

The evidence revealed the following course of events. A confidential informant apprised police that Norman Koch, a/k/a Matt Koch, was selling cocaine and that Koch resided with his sister, Appellant herein, and Dallas Conrad, her paramour, at an address on Aeronca Street in North Middleton Township. Based on that information, police conducted two trash pulls at the residence, which yielded two baggies, one containing cocaine residue, the other marijuana residue. N.T. Trial, 5/26–27/10, at 15. Detective Timothy Lively applied for and obtained a search warrant for Appellant's residence and on March 25, 2009, at approximately 6:05 p.m., members of the Cumberland County Drug Task Force executed the search warrant on Appellant's home. The officers, after identifying themselves and stating their purpose, were granted access to the house. *Id.* at 17. Present were Appellant, her brother Norman Koch, and Dallas Conrad.

Officer Richard Grove of the North Middleton Police Department and assigned to the task force testified that he was involved in the search of the master bedroom. He found two individual baggies of marijuana and seven hundred dollars in a dresser drawer containing male underwear and socks. On top of another longer dresser located in the room, he found a men's shoebox containing a bong, two pipes for smoking marijuana, a grinder used to separate stems and seeds from the leaves, Phillies Blunts cigars, and sandwich bags. In a basement freezer, other officers recovered a small bag of marijuana and a marijuana bud. *Id.* at 31. Scales containing residue of marijuana were located on top of the refrigerator, along with a marijuana pipe.

The task force also seized two cell phones, one of which Appellant identified as hers. The other phone was subsequently identified as her brother's. The text messages on Appellant's phone were transcribed, and the Commonwealth offered, over objections as to authenticity and hearsay, testimony and a transcript of what it described as thirteen drug-related text messages.

The jury returned a verdict of guilty as an accomplice on the PWID charge, guilty as an accomplice on the possession charge, and acquitted Appellant of conspiracy to commit possession with intent to deliver. Appellant's timely post-trial motions raising weight and sufficiency issues were denied. Post-sentence motions also were denied. Appellant timely appealed and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court issued its opinion pursuant to Rule 1925(a), and the matter is ripe for our review.

Appellant raises two issues for our consideration:

1. Did the trial court err in admitting text messages and transcripts of text messages over the objection of defense counsel, where the text messages were not authenticated, the author of the text messages could not be ascertained and were ultimately offered for the truth of the matter asserted?

2. Whether the finder of fact erred in finding there was sufficient evidence to prove all the requisite elements of possession with intent to deliver a controlled substance and simple possession beyond a reasonable doubt, where the evidence presented was that of text messages whose sender

was unknowable and there was no other evidence that Appellant engaged in possessing drugs for delivery or the simple possession of drugs?

Appellant's brief at 7.

■ As Appellant's second issue challenging the sufficiency of the evidence, if meritorious, would result in discharge, we turn to that issue first. Furthermore, in conducting our analysis, we consider all of the evidence actually admitted at trial and do not review a diminished record. *Commonwealth v. Smith*, 523 Pa. 577, 568 A.2d 600, 603 (1989); *Commonwealth v. Dale*, 836 A.2d 150 (Pa.Super.2003). Consequently, our examination is unaffected by our subsequent resolution of the evidentiary issues raised by Appellant.

■ In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa.Super.2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa.Super.2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

■ In order to convict an accused of PWID under 35 P.S. § 780–113(a)(30), the Commonwealth must prove that he "both possessed the controlled substance and had an intent to deliver that substance." *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super.2003). Pennsylvania courts interpreting § 780–113(a)(30), as it applies to PWID, have concluded that the Commonwealth must establish *mens rea* as to

the possession element. *Commonwealth v. Mohamud*, 15 A.3d 80 (Pa.Super.2010). When determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash[.]" *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1237–1238 (2007). Additionally, expert opinion testimony is also admissible "concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." *Id.* at 1238. We held in *Commonwealth v. Bull*, 422 Pa.Super. 67, 618 A.2d 1019, 1021 (1993), *aff'd*, 539 Pa. 150, 650 A.2d 874 (1994), *cert. denied*, 515 U.S. 1141, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995), that such expert testimony, coupled with the presence of drug paraphernalia, is sufficient to establish intent to deliver.

■ Appellant assails the sufficiency of evidence that she possessed the controlled substance with intent to deliver. Viewing the evidence in the light most favorable to the Commonwealth, the quantity of drugs recovered at her home, scales and packaging materials, the text messages, in addition to the expert testimony of Detective Lively, we find that the Commonwealth established PWID beyond a reasonable doubt. Officer Grove testified that he searched the master bedroom of the home and it contained both male and female clothing and mail addressed to Appellant and her paramour/co-defendant, Dallas Conrad. In a dresser drawer containing male underwear and socks, the officer located two baggies containing marijuana adjacent to approximately seven hundred dollars in cash. N.T. Trial, 5/26–27/10, at 21. A man's shoebox located on a longer dresser contained a bong, two pipes, a

grinder, sandwich bags, and the Phillies Blunts cigars. Search of the basement freezer yielded a small bag of marijuana and a marijuana bud. *Id.* at 31.

Detective Lively testified that he had been a member of the Cumberland County Drug Task Force since 2003 or 2004 and that he had training and experience in narcotics and drug-trafficking. *Id.* at 60. He participated in the search and personally recovered a pipe and electronic scales from the top of the refrigerator and two cellular phones. He continued that the purpose of searching for cellular phones is that "more often than not, [they] are used to communicate between dealers and users." *Id.* at 71. The detective stated that he seized an AT & T cell phone that Appellant identified as her phone and that he transcribed the text messages stored in the phone. He segregated those messages that were drug-related from those that were just general communications. *Id.* at 82. The detective related that thirteen of the text messages were drug-related and he explained to the jury what each meant. He "located these texts back and forth with regard to what appeared to be the delivery or intent to deliver controlled substances." *Id.* at 99. He then opined, based on his experience with the way marijuana is delivered, as opposed to personal use, that the large amount of cash, the fact that there was more than one bag of marijuana, and scales saturated with marijuana residue, were indicative of drug sellers rather than users. He further suggested that the nice house, expensive furniture and electronics also were more characteristic of dealers. *Id.* at 98. He opined that the text messages, together with the pipes and bongs, also indicated possession. *Id.* at 101. We find such evidence sufficient to sustain convictions for PWID and possession, and no relief is due on this basis.

Appellant's remaining issue is a challenge to the admissibility of the text message evidence. Our standard of review of such a claim is as follows:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. *Commonwealth v. Drumheller*, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), certiorari denied, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003). *See also Commonwealth v. Lewis*, 2005 PA Super 341, 885 A.2d 51, 54 (Pa.Super.2005).

*Commonwealth v. Levanduski*, 907 A.2d 3, 13–14 (Pa.Super.2006).

Appellant alleges first that the trial court erred in admitting text messages into evidence that were not properly authenticated. Appellant insists there was no evidence substantiating that she was the author of the text messages, nor evidence that drug-related texts were directed to her because Commonwealth witnesses conceded that another person was using Appellant's phone at least some of the time.

Pennsylvania Rule of Evidence 901 provides that authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. Pa.R.E. 901(b)(1). *See also* Comment, citing *Commonwealth v. Hudson*, 489 Pa. 620, 414

A.2d 1381 (1980). Furthermore, electronic writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated. Circumstantial evidence may suffice where the circumstances support a finding that the writing is genuine. *In the Interest of F.P., a Minor,* 878 A.2d 91 (Pa.Super.2005).

While Detective Lively testified that the cellular phone from which the messages were recovered belonged to Appellant, he conceded that the author of the drug-related text messages could not be ascertained. He further acknowledged that some of the text messages referenced Appellant in the third person and thus, were clearly not written by her. N.T. Trial, 3/26/10, at 104. Furthermore, the text messages were not complete; it was evident that some had been deleted. *Id.* at 89.

■ The question of what is necessary to authenticate a text message appears to be an issue of first impression in Pennsylvania. Text messages are defined as "writings or other data transmitted electronically by cellular telephones" that constitute an electronic communication for purposes of the Wiretap Act. *See Commonwealth v. Cruttenden,* 976 A.2d 1176, 1181 (Pa.Super.2009), *appeal granted,* 610 Pa. 454, 21 A.3d 680 (2011). In determining what is required to authenticate text messages, we look first to the treatment accorded other electronic communications.

In *In the Interest of F.P., a Minor, supra,* this Court examined the issue of whether instant message transcripts had been appropriately authenticated. The Commonwealth sought to introduce instant messages from screen name "Icp4Life30" to WHITEBOY Z. The victim identified himself as WHITEBOY Z and testified that he thought Icp4Life30 was the defendant. In that case, the victim testified about the events that occurred involving defendant. The defendant had threatened the victim via instant message, and when this was reported to the school counselor, there was a meeting between defendant and school officials. A mediation between both students was conducted by a school guidance counselor. The contents of the instant messages referred to these ongoing events and in one instance, the defendant referred to himself by his first name. Throughout, the defendant never denied sending the messages. We concluded that this circumstantial evidence sufficiently identified defendant as "Icp4Life30" and authenticated the instant message transcripts.

Importantly, in *In the Interest of F.P., a Minor, supra,* we rejected the argument that e-mails or text messages are inherently unreliable due to their relative anonymity and the difficulty in connecting them to their author. *Id.* at 95. We reasoned that the same uncertainties existed with written documents: "A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen." *Id.* Concluding that electronic communications, such as e-mail and instant messages, can be authenticated within the framework of Pa.R.E. 901 and our case law, we declined to create new rules governing the admissibility of such evidence. We held that such evidence is to be evaluated on a case-by-case basis as any other document to determine whether there has been an adequate foundational showing of its relevance and authenticity.

Our approach and rationale in *In the Interest of F.P., a Minor,* was cited favorably by the Supreme Court of North Dakota in *State v. Thompson,* 777 N.W.2d 617, 624–627 (N.D.2010), a case of first impression involving the authenticity of text messages. That state's highest court performed an extensive review of other jurisdictions' authenticity requirements for

electronic communications generally and summarized its findings. In every case cited therein, authentication involved more than just confirmation that the number or address belonged to a particular person. Often it was important that there be evidence that the e-mails, instant messages, or text messages themselves contained factual information or references unique to the parties involved. *See Thompson, supra* and cases cited therein; *e.g., Dickens v. State,* 175 Md.App. 231, 927 A.2d 32, 36–38 (2007) (threatening text messages received by victim on cell phone were properly authenticated when circumstantial evidence provided adequate proof message was sent by defendant).

In *People v. Chromik,* 408 Ill.App.3d 1028, 349 Ill.Dec. 543, 946 N.E.2d 1039 (Ill.App.3 2011), an Illinois appellate court held that a transcription of text messages created by the school principal as read to him by the victim was authentic. While the transcription was not completely accurate, the dates and times of text messages sent from the defendant to the victim were consistent with phone company records. The victim also testified as to the contents of the text messages and the accuracy of the principal's transcription.

Similarly, in *State v. Taylor,* 178 N.C.App. 395, 632 S.E.2d 218 (2006), the court held that testimony from the network's strategic care specialist and the manager of a wireless store was sufficient to authenticate the transcription of the text messages sent to and from the victim's assigned cellular telephone number. The court held further that the text messages themselves contained sufficient circumstantial evidence tending to show the identity of the person who sent and received them.

■ Implicit in these decisions is the realization that e-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally. A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting. *See McCormick on Evidence,* §§ 219–221 (E. Cleary 2d Ed.1972). A document also may be authenticated by circumstantial evidence, a practice which is "uniformly recognized as permissible." *Commonwealth v. Brooks,* 352 Pa.Super. 394, 508 A.2d 316 (1986), (citing, *e.g., Commonwealth v. Nolly,* 290 Pa. 271, 138 A. 836 (1927) (letters authenticated by contents: facts known only to sender and recipient); *Commonwealth v. Bassi,* 284 Pa. 81, 130 A. 311 (1925) (unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and witness-recipient); and *McFarland v. McFarland,* 176 Pa.Super. 342, 107 A.2d 615, 616 (1954)).

As these cases illustrate, the difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.

■ Text messages are somewhat different in that they are intrinsic to the cell phones in which they are stored. While e-mails and instant messages can be sent and received from any computer or smart phone, text messages are sent from the cellular phone bearing the telephone number identified in the text message and

received on a phone associated with the number to which they are transmitted. The identifying information is contained in the text message on the cellular telephone. However, as with e-mail accounts, cellular telephones are not always exclusively used by the person to whom the phone number is assigned.

Such was the case herein. Detective Lively testified that he transcribed the text messages, together with identifying information, from the cellular phone belonging to Appellant. He acknowledged that he could not confirm that Appellant was the author of the text messages and that it was apparent that she did not write some of the messages. Regardless, the trial court found that the text messages were sufficiently authenticated to be admissible. The court reasoned that doubts as to the identity of the sender or recipient went to the weight of the evidence, rather than to its admissibility.

We disagree. Authentication is a prerequisite to admissibility. The detective's description of how he transcribed the text messages, together with his representation that the transcription was an accurate reproduction of the text messages on Appellant's cellular phone, is insufficient for purposes of authentication where the Commonwealth concedes that Appellant did not author all of the text messages on her phone. We held in *In the Interest of F.P., a Minor,* and courts of other jurisdictions concur, that authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required.

Glaringly absent in this case is any evidence tending to substantiate that Appellant wrote the drug-related text messages. No testimony was presented from persons who sent or received the text messages. There are no contextual clues in the drug-related text messages themselves tending to reveal the identity of the sender. In addition to evidence that Appellant identified the phone as hers, the trial court relied upon the fact that the cellular phone was found on the table in close proximity to Appellant. Trial Court Opinion, 11/30/10, at 13. However, we find Appellant's physical proximity to the telephone to be of no probative value in determining whether she authored text messages days and weeks before. On these facts, the admission of the text messages constituted an abuse of discretion.

Furthermore, we find merit in Appellant's position that the text messages constituted inadmissible hearsay. The Commonwealth argued at trial that the out-of-court statements were not offered for the truth of the matter asserted, and thus were not hearsay. Instead, they were offered to "prove the fact that these things were said on this phone." N.T. Trial, 5/25–26/10, at 75. Counsel for the Commonwealth elaborated: "I am not offering it to prove that on this date and time she actually delivered, you know, this marijuana or—I'm just showing that these statements were made on the phone that belonged to her and that—that these other types of statements then would constitute drug receipts, drug statements, and orders." *Id.* Counsel explained further that Detective Lively made a list of what he determined were thirteen drug-related texts. *Id.* at 77. It was the Commonwealth's intention to have the detective explain the difference between the drug-related text messages and the non-drug-related texts to show that that Appellant's phone was used in drug transactions, making it more probable that when she possessed the marijuana, she did so with the intent to deliver as opposed to personal

use. *Id.* Based on this proffer, the trial court ruled the text message evidence admissible. For the reasons that follow, we conclude that the text messages constituted inadmissible hearsay.

Pennsylvania Rule of Evidence 801 defines hearsay as follows:

(a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

(b) Declarant. A "declarant" is a person who makes a statement.

(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Pa.R.E. 801. Additionally, Pa.R.E. 802 provides: "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

The Commonwealth's position that the text messages were not offered for the truth of the matter is unsupported by the record. The only relevance of the text messages and precisely the reason the Commonwealth sought to introduce them was because they demonstrated an intent to deliver. The relevance was not that statements were made, but the content of the statements. The evidentiary value of the text messages depended entirely on the truth of their content. *See Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981). In addition, not only was the evidence improperly admitted, it was then used by the Commonwealth as the basis for the detective's expert opinion testimony that it indicated a drug exchange, and that the transaction did occur. *Id.* at 87, 89. The mere existence of the text messages themselves was not enough to prove PWID. The jurors had to believe the actual text of the text messages, that is, the

matters asserted therein, to grasp what the text messages were offered at trial to prove.

▪ Nor is there any exception to the hearsay rule that would render these text messages admissible. Arguably, the text messages could have been admitted under the exception to the Pennsylvania hearsay rule for admissions of a party opponent. *See* Pa.R.E. 803(25). However, they are not party admissions because the Commonwealth was unable to prove that Appellant was the author. Thus, on the basis of hearsay as well, the admission of the text messages constituted an abuse of discretion.

▪ The sole question remaining is whether this abuse of discretion warrants a new trial. A new trial is mandated where the error is not harmless beyond a reasonable doubt. As we explained in *Commonwealth v. Thornton, supra*, "[t]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that '[a] defendant is entitled to a fair trial but not a perfect one.' " *Thornton, supra* at 251. *Accord, Commonwealth v. Drummond*, 775 A.2d 849, 853 (Pa.Super.2001). In *Commonwealth v. Moore*, 594 Pa. 619, 937 A.2d 1062 (2007), our highest court reaffirmed that an error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict. Whenever there is a "reasonable possibility" that an error "could have contributed to the verdict," the error is not harmless. *Commonwealth v. Passmore*, 857 A.2d 697, 711 (Pa.Super.2004). "An error may be deemed harmless, *inter*

*alia,* where the properly admitted and un-contradicted evidence of guilt was so over-whelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Commonwealth v. Moore, supra* at 1073. Harmless error exists when the error did not prejudice the de-fendant or the prejudice was *de minimis* or the erroneously admitted evidence was merely cumulative of other untainted evi-dence, which was substantially similar to the erroneously admitted evidence. *Com-monwealth v. Passmore, supra* at 711.

Our review of the certified record convinces us that the improper ad-mission of the text message evidence could reasonably have contributed to the jury's verdict. This is not a case where the Commonwealth presented overwhelm-ing properly admitted evidence regarding Appellant's involvement in drug transac-tions. The Commonwealth's case against Appellant rested on this evidence and evi-dence that drugs were found in the bed-room she shared and in common areas of her home. No controlled substance was found on the Appellant's person, and thus it was incumbent upon the prosecution to prove constructive possession of the con-trolled substance to justify conviction. *Commonwealth v. Smith,* 345 Pa.Super. 196, 497 A.2d 1371 (1985). *Common-wealth v. Stokes,* 294 Pa.Super. 529, 440 A.2d 591 (1982). Our Supreme Court held in *Commonwealth v. Reece,* 437 Pa. 422, 263 A.2d 463 (1970), that it is not a crime to live in a house where illegal activity occurs if one does not participate in such activity. Proof of constructive possession

requires that one had both power to con-trol and intent to exercise control over the narcotics. *Commonwealth v. Hoetzel,* 284 Pa.Super. 623, 426 A.2d 669 (1981). *But see Commonwealth v. Mudrick,* 510 Pa. 305, 507 A.2d 1212, 1214 (1986) ("even absent a marital relationship[,] construc-tive possession may be found in either or both actors if contraband is found in an area of joint control and equal access."). In order to prove possession with intent to deliver, the Commonwealth must prove beyond a reasonable doubt both that the defendant possessed the controlled sub-stance and had the intent to deliver. *Commonwealth v. Carpenter,* 955 A.2d 411 (Pa.Super.2008). The text messages on Appellant's phone were a vital element of the Commonwealth's proof on both charges.

The prejudicial effect of the im-properly admitted text message evidence was so pervasive in tending to show that Appellant took an active role in an illicit enterprise that it cannot be deemed harm-less. Even with the improperly admitted evidence, the jury only found Appellant liable as an accomplice.[1] Accordingly, we conclude that the erroneous admission of the highly prejudicial electronic communi-cations herein was not harmless error and a new trial is warranted.

Judgment of sentence reversed. Case remanded for new trial. Jurisdiction relin-quished.

---

1. One may conceivably be found guilty of PWID as an accomplice. In *Commonwealth v. Murphy,* 577 Pa. 275, 844 A.2d 1228 (2004), a state trooper, acting undercover, ap-proached the defendant and asked him if he knew where he could buy drugs. The defen-dant signaled to another man, who eventually accepted the trooper's money in exchange for drugs. We upheld the defendant's conviction as an accessory, holding that in order to be an accessory to the offense of delivering drugs, one must have had the intent to actively aid in the delivery and then aid the deliverer.