Special Justice MICHAEL O. PARKER joins in this dissent.

2012 Ark. 368

**Michael Dewayne GULLEY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–271.**

Supreme Court of Arkansas.

Oct. 4, 2012.

Terrance Cain, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Rebecca Kane, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant Michael Gulley appeals from a judgment and commitment order for the capital murder of Amy Smith and the attempted capital murder of Naaman Moss. Gulley was sentenced to consecutive sentences of life in prison without parole, thirty years' imprisonment, and a fifteen-year enhancement for using a firearm during the commission of the attempted capital murder. He now appeals his convictions and sentences based on alleged error committed by the circuit court in admitting three of his text messages into evidence. Finding no error, we affirm.

The facts are these. Shortly after midnight on June 7, 2009, Amy Smith was shot and killed while in her apartment in Prescott. Naaman Moss, who was also in Smith's apartment that night, was shot and wounded. Witnesses who were on the front porch of a neighboring apartment stated at trial that Gulley visited Smith's apartment complex three times that evening. The first time he visited he was in a car and stopped in the parking lot for a few seconds. The second time that he visited, he rode a bicycle, approached the witnesses, and asked who was in Smith's apartment. The final time, he was in a different vehicle. On this third occasion, he got out of the vehicle, approached Smith's apartment, threw something through a window, and fired shots into the apartment. Gulley was arrested shortly after that and charged by information on July 24, 2009, with capital murder, criminal attempt to commit capital murder, several counts of terroristic acts, and possession of a firearm by certain persons. He was also charged as a habitual offender.[1]

At trial, the State presented evidence that Gulley and Smith had dated, that Smith no longer wanted to be in a relationship with him, and that Smith was fearful of Gulley and afraid for her life. The State also presented evidence of three text messages that it alleged were sent by Gulley on the day before Smith's murder. In addition, Bryant Sims testified that just before midnight on June 6, 2009, Gulley had a handgun and stated that he was going to kill Smith. Based on the evidence presented by the State, the jury convicted Gulley of the capital murder of Smith and the attempted capital murder of Moss. He was sentenced as already set out in this opinion.

Gulley's arguments on appeal involve the three text messages that the circuit court allowed into evidence during the testimony of Verizon Wireless employee Grant Laisure. Mr. Laisure testified as to the content of each message, all of which

---

1. The initial information was later amended to correct the county in which the crimes occurred from Hempstead County to Nevada County.

were sent on the day before the murder from a prepaid cellular telephone number assigned to Gulley. Verizon Wireless sold the cellular telephone to Gulley. The first text message was allegedly sent by Gulley to his cousin-by-marriage, Edward Gulley, at 9:24 a.m., and read, "She telling you one thing and everybody else something else. That bitch call you when she get scared, fucked out tramp. If I get anything to do with it, Ki going to be left without any parents and that is boss." The second text message was sent to Mechawana Pearson, Gulley's girlfriend at the time, at 4:07 p.m. and read, "Dats okay too, I got a car out the deal, dat bitch gonna pay, it's just a matter of time." The third text message was sent at 11:30 p.m. to a number assigned to Smith and said, "I'm getting dropped off over there." These text messages were obtained by the prosecutor pursuant to subpoenas served on Verizon Wireless employees on July 29, 2010, and August 2, 2010.

## I. State's Procurement of Text Messages

Gulley's first point for reversal is that the substance of the three text messages from the cellular telephone number assigned to him should have been excluded from evidence because the State violated the Stored Communications Act (SCA). See 18 U.S.C. §§ 2701–2712 (2006). Although Gulley presents his argument as one point based on the SCA, he actually makes three different arguments. First, he maintains that the State incorrectly used a prosecutor's subpoena to obtain the text messages rather than a search warrant, as required by the SCA. Next, he argues that the State's procurement of the substance of the text messages via subpoena violated his constitutional rights under the Fourth Amendment to the United States Constitution. For his third point, he makes a state constitutional argument alleging an illegal search under article 2, section 15 of the Arkansas Constitution.

In response to these arguments, the State contends that Gulley failed to preserve his claim under the SCA and the Arkansas Constitution for our review. The State further contends that Gulley's Fourth Amendment claim is without merit because the text messages were procured by prosecutor's subpoena pursuant to a statutory power granted to state prosecutors, and Gulley failed to allege that the prosecutor abused that power in the instant case.

We agree that Gulley failed to preserve both his SCA argument and his illegal-search argument based on the Arkansas Constitution for our review. The issue of text messages sent from Gulley's cellular telephone number arose prior to Mr. Laisure's testimony and during the direct examination of Gulley's cousin, Edward Gulley.[2] At that time, Gulley's attorney asked that the State not be permitted to use the text messages for any purpose because they were obtained by means of a prosecutor's subpoena and not by a search warrant following a court order. Gulley's attorney likened the text messages to the recording of a telephone conversation via wiretap. He argued that the State should not be allowed to use the text messages because they were obtained "illegally."

During Edward Gulley's testimony, Gulley's counsel made an oral motion to exclude the text messages, and the court entertained argument on this point. Gulley's counsel expanded on his objection

---

2. For clarification purposes, we refer to Edward Gulley by his full name. Any reference to "Gulley" refers only to the appellant.

after Edward Gulley's testimony as follows:

> DEFENSE COUNSEL: Judge, if the Court will recall on more than one occasion I have asked about the Court ruling on the exclusion of text messages. Let me be a little more precise with my motion. My motion is to preclude the State from using text messages particularly from or alleged to be from my client, Michael Gulley, and under the theory that there is a reasonable expectation of privacy when a person text messages someone similar to a telephone conversation.... Mr. Gulley's, in particular, text messages or a summary of his text messages for a short period of time ... were obtained via a prosecutor's subpoena rather than by court order or warrant. It is our position that that violates obviously his rights to remain silent, his right to have his communications secured and it is no different than if the State had subpoenaed or obtained a tap of a telephone because it is an exact transcription.

> PROSECUTOR: Your Honor, [sic] please the Court. We respectfully disagree with regard to text messages there is a third party who intercepts them every time one sends one, the telephone carrier. So there is no expectation of privacy.

> . . .

> DEFENSE COUNSEL: If I send a text message out it is digitally transmitted through the air wave just like a telephone call is. There is no difference. The fact that they maintained it and printed it out is what the difference is but there is a reasonable expectation of privacy. It may have been subject to a warrant but not to a subpoena.

> . . .

> DEFENSE COUNSEL: You do not expect the telephone company is going to take it upon themselves to give it to a third party based on a subpoena. It has to be probable cause to get it not just carte blanche you issue a subpoena and go get it. That is what happened here. It may otherwise be something that could be used if a Judge says it but not by a Prosecutor just exercising its own subpoena.

> PROSECUTOR: I respectfully disagree, Your Honor, with regard to the Prosecutor's subpoena. Like I say, it is just like a grand jury, it's a quasi-magisterial function and it is a power that is conferred upon the office of the Prosecuting Attorney, same as grand jury in the State of Arkansas.

> . . .

> THE COURT: I understand but there cannot be an expectation because it is picked up by—it can be picked up by a scanner with the proper device. I will note your objection.

> DEFENSE COUNSEL: Motion is denied?

> THE COURT: Denied.

Then, immediately prior to Mr. Laisure's testimony, the State informed the court that it planned to introduce as an exhibit a series of text messages sent from and received by Gulley's cellular telephone. Gulley objected on the basis of relevancy, juror confusion, hearsay as to the text messages allegedly sent by Smith, and Rule of Evidence 403. The court reviewed the exhibit and ruled that only the three text messages sent from Gulley's cellular telephone—one to Edward Gulley, one to Pearson, and one to Smith—would be admissible.

It is clear from the above colloquy that Gulley never argued to the circuit court that the SCA or the Arkansas Constitution provided support for excluding

the text messages. While we have held that objections need not cite specific rules to be sufficient, this court has made it clear that a specific objection is necessary in order to preserve an issue for appeal. *Vanesch v. State*, 343 Ark. 381, 37 S.W.3d 196 (2001). To preserve an argument for appeal, there must be an objection to the circuit court that is sufficient to apprise the court of the particular error alleged, and we will not address arguments raised for the first time on appeal. *Gilliland v. State*, 2010 Ark. 135, 361 S.W.3d 279. Furthermore, a party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Id.* Also, an argument is not preserved for appellate review unless the trial court rules on the specific objection raised by the appellant. *McLane Co. v. Weiss*, 332 Ark. 284, 965 S.W.2d 109 (1998). In the case before us, Gulley failed to argue either the SCA or the Arkansas Constitution to the circuit court; he failed to secure a ruling from the ₇circuit court on either argument; and he raises those arguments for the first time on appeal. We hold that we are now barred from considering those points.

Gulley did claim before the circuit court that he had an expectation of privacy in text messages sent from his cellular telephone and that the State should have been required to secure a search warrant or court order to obtain the content of those text messages from Verizon. He maintained that the State had violated his right "to remain silent, his right to have his communications secured and it is no different than if the State had subpoenaed or obtained a tap of a telephone because it is an exact transcription."

▮▮ A prosecutor may subpoena witnesses to appear before him or her with respect to matters being investigated.

Ark.Code Ann. § 16–43–212 (Supp.2011). The prosecutor's subpoena power is statutorily created to assist in implementing the power of prosecutors to bring criminal charges by information and designed to replace the grand-jury system. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996). The emergency clause of the statute states that it was enacted to enable prosecutors to prepare criminal cases properly. *Id.* Prosecuting attorneys, in addition, have an affirmative duty to investigate crime. *Streett v. Stell*, 254 Ark. 656, 495 S.W.2d 846 (1973).

▮ A prosecutor may issue subpoenas to prepare for trial after charges have been filed as long as the power is not abused. *Neal v. State*, 320 Ark. 489, 898 S.W.2d 440 (1995). We will reverse a conviction where a prosecutor has abused his or her power and the appellant has been prejudiced. *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004). For example, a prosecutor abuses the subpoena power when he or she commands that records be produced ₈for police agencies because such action amounts to giving the subpoena power to the police. *State v. Hamzy*, 288 Ark. 561, 563, 709 S.W.2d 397, 398 (1986).

▮ As the State correctly points out, Gulley has not alleged that the prosecutor in this case abused his subpoena power. Rather, Gulley simply argues that he had an expectation of privacy in his text messages and that the procurement of his text messages without a search warrant violated his right to be secure in his communications. Notably, however, "the search and seizure clause of the [Fourth] Amendment was not intended to interfere with the power of courts to compel, through a subpoena duces tecum, the production, upon a trial in court, of documentary evidence." *Hale v. Henkel*, 201 U.S. 43, 73, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

In regard to pretrial subpoenas duces tecum, the Fourth Amendment, "if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' . . . . The gist of the protection is in the requirement . . . that the disclosure sought shall not be unreasonable." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The Supreme Court of the United States has specifically required only that "the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. City of Seattle*, 387 U.S. 541, 544, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984); *see also Pollard v. Roberts*, 283 F.Supp. 248 (E.D.Ark.1968) (holding that statute authorizing prosecutor's subpoena power was constitutional and limited only by reasonableness as articulated in *Oklahoma Press Publishing Co. v. Walling* ).

In the instant case, Gulley made no argument before the trial court—and makes no argument on appeal—that the prosecutor abused the subpoena power. Moreover, the Court has established that the Fourth Amendment, while applicable to the subpoena power, requires only that the prosecutorial power be reasonable. See *Okla. Press Publ'g Co.*, 327 U.S. at 208, 66 S.Ct. 494. Gulley, however, has neglected to argue that the prosecutor's subpoena requests in the instant case were unreasonable in scope or irrelevant. He merely pursued a Fourth Amendment argument based on his expectation of privacy, arguing that the subpoena was the wrong avenue for obtaining the text-messaging records and that a search warrant or court order was required. While this court has recognized that evidence gathered pursuant to a prosecutor's subpoena

can be illegally seized under the Fourth Amendment if the prosecutor abuses the subpoena power, we have also required that the defendant articulate to the trial court how the subpoena power was abused. See *Hamzy*, 288 Ark. at 563, 709 S.W.2d at 398. Because Gulley failed to show that the prosecutor abused the subpoena power, we decline to address his contention that the text messages obtained as a result of the statutorily authorized subpoena power were the product of an illegal seizure under the Fourth Amendment.

## II. *Admissibility of Text Messages*

For his second point on appeal, Gulley contends that the circuit court erred in admitting the three text messages from his cellular telephone into evidence because they were hearsay and not properly authenticated. Gulley acknowledges that the State established through the testimony of Mr. Laisure that the messages were sent from a cellular telephone number assigned to him, but he maintains that the State failed to establish that he was the person who sent those messages. In addition, Gulley claims that the text messages do not constitute admissions of a party opponent because the State did not prove those messages were authored by him.

It is well settled that challenges to the admissibility of evidence are left to the sound discretion of the circuit judge, and a judge's ruling on these matters will not be reversed unless there has been an abuse of discretion. *Lacy v. State*, 2010 Ark. 388, 377 S.W.3d 227. The abuse-of-discretion standard "is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration." *Grant v. State*, 357 Ark. 91, 93, 161 S.W.3d 785, 786 (2004). Nor

will we reverse absent a showing of prejudice. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002).

 As a threshold matter, the State urges that Gulley failed to preserve either of his admissibility arguments. Prior to the testimony of Mr. Laisure, the following colloquy took place:

PROSECUTOR: We are going to move into Mr. Laisure with the Verizon next.

. . .

DEFENSE COUNSEL: I am going to object to, the confusing nature of—now what [Gulley] says may be based on your ruling, is admissible but what somebody says back then is not necessarily admissible. And if you just to allow what he says to go out, it is confusing—403.

. . .

DEFENSE COUNSEL: You let the whole thing in, so you have text messages coming back from who knows who from a number and the thing about it is I cannot cross examine that particular person. *First of all, we do not know who it is and just because it came from a person's number does not necessarily mean it is the person.* (Emphasis added.)

PROSECUTOR: It will not be, Judge. I have been through it with Mr. Laisure, it will not be confusing at all. He checked the telephone numbers to whom they were registered and that is sufficient.

THE COURT: In those records there is going to be the actual text message back and forth?

PROSECUTOR: Yes, Your Honor.

. . .

DEFENSE COUNSEL: In addition to those arguments, Judge, I am asking that it be excluded under 403. The basis for that is, the Court's ruling as it stands now is my understanding that text messages that purport to be from Michael Gulley's telephone going out are admissible based on your ruling, if I am correct.

. . .

THE COURT: Here is the ruling from the Court. On this Saturday, June 6 at 9:24 a.m. two circled to Edward Gulley's telephone will be admitted. [sic] The 3:43 p.m. Saturday afternoon to the Defendant's telephone to 331–9349 . . . Mechawana Pearson will not be admissible. The 4:07 p.m. Saturday afternoon to Ms. Pearson will be admissible. And the Saturday, June 6 at twenty-three thirty, one text from the Defendant's telephone to the victim's telephone, Ms. Smith, that I am getting dropped over there will be admissible, otherwise, nothing else.

 Although Gulley and the court, in the excerpt above, refer to the fact that the court already ruled on the admissibility of the text messages sent from Gulley, the only arguments Gulley previously made with regard to the text messages were: (1) that the State's obtaining them by way of subpoena instead of search warrant was illegal; (2) that the State had failed to lay a foundation for allowing Edward Gulley to testify that he received a text message from Gulley; (3) that allowing Edward Gulley to testify that he received text messages from Gulley was speculative because there was no proof that he sent the texts; and (4) that allowing Edward Gulley to testify that he received text messages from a telephone number assigned to Gulley was irrelevant.[3] Gulley appears to con-

---

**3.** Although Gulley objected on the basis of Rule 403 below, his briefs before this court include no argument on this point. Issues raised below but not argued on appeal are

cede during the exchange that the court has allowed the text messages from him into evidence and is arguing only with regard to the text messages to him from other people.

It is clear to this court that the only hearsay argument Gulley made was in reference to the text messages sent from Smith. He maintained that her text messages were hearsay and that he did not have an opportunity to cross-examine her. Gulley never argued that his own text messages were hearsay. Thereafter, the circuit court specifically ruled that the content of only three text messages—all sent from Gulley's cellular telephone number—would be allowed into evidence through Mr. Laisure. Gulley has now changed his argument on appeal because he now argues that his own text messages constitute inadmissible hearsay. Changing arguments on appeal is impermissible, and we hold that this hearsay argument is barred from our review. See *Allen v. State*, 374 Ark. 309, 319, 287 S.W.3d 579, 586 (2008) ("An appellant is limited by the scope and nature of the arguments and objections presented at trial and may not change the grounds for objection on appeal.").

 Gulley did, however, contend that just because a message "came from a person's number does not necessarily mean it is the person . . . ." That is enough, in our judgment, to preserve the authentication point. Authentication of a document is a condition precedent |₁₃to admissibility. *Davis v. State*, 350 Ark. 22, 39, 86 S.W.3d 872, 883 (2002). On the issue of authentication, our rules of evidence provide: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent

considered abandoned. *State v. Johnson*, 374 Ark. 100, 102, 286 S.W.3d 129, 131 (2008)

claims." Ark. R. Evid. 901(a) (2010). Rule 901 further provides that the testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient to authenticate evidence, and also that appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances can be used to authenticate evidence. Ark. R. Evid. 901(b)(1) & (4).

Gulley contends that the text messages in this case were not authenticated because the State failed to show that he actually authored the messages. Instead, he urges that the State merely proved that the messages came from a cellular telephone number assigned to him.

 With regard to the text messages sent from Gulley to Edward Gulley, Mr. Laisure testified that the message was sent from a telephone number assigned to Gulley. The text message also referred to someone named "Ki." Smith's son is often called Chi by his family. The message stated that "Ki gonna be left without any parents." Chi's father, Angelo Goshen, testified that Gulley threatened to kill him (Goshen) during an altercation after one of Chi's t-ball games. Goshen testified that the altercation occurred on the same day that Gulley sent the text message to Edward Gulley. Moreover, Edward Gulley testified that he was sending messages back and forth with a number associated with Gulley and that he was "having a text message conversation with Michael Gulley." The testimony from Mr. Laisure, |₁₄Edward Gulley, Angelo Goshen, as well as the contents of the message, are sufficient to authenticate the text message in question as being authored by Gulley.

(citing *Jordan v. State*, 356 Ark. 248, 147 S.W.3d 691 (2004)).

■ The second text message at issue is one sent to Smith's telephone which read, "I'm getting dropped off over there." Testimony from Mr. Laisure established that this text message was sent from the telephone number assigned to Gulley. Mr. Laisure added that the text message was sent at 11:30 pm on June 6, 2009. Another witness, Sharlene Christopher, testified that in the early morning hours of June 7, 2009, the date of Smith's murder, she saw Gulley get out of the passenger side of a white Chevy Malibu, run in front of Smith's apartment, hit or bang on her window, and then she heard gunshots. We hold that the testimony establishing that the text message came from a cellular telephone number assigned to Gulley, together with the witness testimony that Gulley was in fact dropped off at Smith's apartment the night that she was killed, is sufficient to meet the authentication requirements of Rule 901.

■ The final text message at issue was sent to Pearson. This text message stated, "Dat's okay too, I got a car out of the deal, dat bitch gonna pay, its just a matter of time." Pearson testified that she received calls from the cellular telephone number assigned to Gulley on June 6, 2009. She testified that Gulley was the person she spoke to when she received those calls. In addition to the calls, she testified that she received other text messages from the same cellular telephone number on the same date. Pearson also testified that Gulley owned a Cadillac and that Amy helped him finance the car.

This testimony supports the conclusion that the text message at issue is from Gulley because the text message states "I got a car out ⌊₁₅of the deal." As a final point, Mr. Laisure testified that the text message came from the cellular telephone number assigned to Gulley, which was the same number that sent the text messages we previously discussed. When combined, all of this evidence is sufficient to authenticate that the text message to Pearson was written by Gulley. Because there is sufficient evidence to authenticate all three text messages at issue, we find that the circuit court did not abuse its discretion in admitting any of the three text messages at trial.[4]

### III. Compliance with Rule 4–3(i)

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2012), the record has been reviewed for all objections, motions, and requests made by either party that were decided adversely to Gulley, and no prejudicial error was found.

Affirmed.

---

4. Gulley cites this court to *Commonwealth v. Koch*, 39 A.3d 996 (Pa.Super.2011), in support of his contention that the text messages at issue in his case were not properly authenticated. Because the text messages at issue were properly authenticated, as required by Arkansas Rule of Evidence 901, we need not look to other jurisdictions to resolve this issue. We note, however, that the *Koch* Court held that the authentication of electronic communications requires more than mere confirmation that the telephone number belonged to a particular person; circumstantial evidence, which tends to corroborate the identity of the sender, is also required. *Id.* at 1005. In the instant case, sufficient circumstantial evidence was presented to corroborate the identity of the sender.