Pamela Jane Anderson WILSON *v.*
John Dan KEMP, Jr., Administrator

CA 82-152                                     644 S.W.2d 306

## Court of Appeals of Arkansas
### Opinion delivered December 22, 1982
[Rehearing denied January 19, 1983.*]

---

*CLONINGER and GLAZE, JJ., would grant rehearing.

*Herby Branscum, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *E. Jeffery Story,* Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Pamela Jane Anderson Wilson appeals from an order of the Probate Court of Stone County denying her petition for probate of a holographic will purportedly written and signed by Jack Blue, deceased. She advances four arguments for reversal of that order and also appeals a subsequent order disapproving a settlement agreement between her and the State for an equal division of the assets of the estate. We find no merit in either appeal.

A general recital of the background and events leading to these appeals is necessary for an understanding of the issues presented. A more specific recitation of the details pertinent to the issues will be made as those issues are addressed.

Jack Blue died at the age of eighty on November 19, 1977. Prior to his death he had established a close relationship with appellant who had done chores for him and treated him with kindness since she was twelve years old. She was approximately seventeen years of age at the time of his death. There was testimony from appellant and others that he had stated on numerous occasions that at his death she would receive his entire estate. At the time of his death, however, no will was found. On December 8, 1977 John Dan Kemp, Jr. was appointed administrator of Blue's intestate estate which was ultimately valued in excess of $55,000. As the petition for appointment of administrator listed no relatives of the deceased within those inheriting classes set forth in Ark. Stat. Ann. § 61-149 (Repl. 1971) the prosecuting attorney appeared on behalf of the State in order to protect the interest of the State in the event of escheat pursuant to Ark. Stat. Ann. § 61-150 (Repl. 1971).

Over a year later appellant offered for probate as the last will of the deceased a writing purportedly written and signed by the deceased. She testified that the writing was found among papers delivered to her by the coroner after Blue's funeral. The proffered will was as follows:

At my deth [sic] Pamela Anderson gets every thing.

Jack Blue

The State answered denying that the will was a valid one and prayed that the petition be denied. Prior to the hearing the State withdrew its objection. The court then instructed the administrator to take an adversary position to admitting the will. At the conclusion of the hearing, and over the objection of appellant, the court on its own motion appointed a handwriting expert to examine the documents. The expert filed a written report that the proffered writing was forged. The court entered its order denying the appellant's petition to admit the will to probate and appellant filed a timely notice of appeal from this order.

Thereafter appellant entered into an agreement with the prosecuting attorney under which the administrator would be paid a fee of $3,000 and the balance of the estate would be equally divided between the two parties. This agreement was expressly made subject to the approval of the court. On January 5, 1982 the court entered its order disapproving the settlement, finding that the agreement was not in the best interest of the estate. Appellant appeals that order also.

## I.

The appellant first contends that the court's holding that the proffered holographic will was forged was against a clear preponderance of the evidence. She argues that of the twelve persons who testified at the August 11th hearing, eleven stated that they were familiar with the signature and handwriting of the deceased and expressed their opinion that the proffered will was written entirely in the hand-writing of the deceased. Only Gary Sutton, who denied having ever seen the handwriting or signature of the deceased, did not join in that opinion. This argument would be more persuasive if the probate judge had made his determination solely on the basis of the evidence adduced at that hearing. But the judge did not do this.

At the conclusion of the hearing the judge indicated that he was not satisfied and was considering the appointment of a handwriting expert. He subsequently did so. On August 31, 1981 the expert filed his report with the court in which he concluded, "I am positive the words and signature (on the proffered will) were fabricated by someone other than Jack Blue in clumsy, crude imitation of Blue's handwriting."

Ark. Stat. Ann. § 62-2117 (b) (Repl. 1971) provides that proof of a holographic will shall be made by the testimony of at least three credible disinterested witnesses proving the handwriting and signature of the testator and such other facts and circumstances as would be sufficient to prove a controverted issue in equity. Controverted issues in equity are determined by a preponderance of the evidence. The factual question before the court was whether the proffered document had been forged. It is true that more witnesses testified for the appellant than for the appellee, but the weight of evidence depends upon its effect in inducing belief. The question is not on which side the witnesses are more numerous, but what is to be believed. *Romaines* v. *Brumfield,* 199 Ark. 1066, 136 S.W.2d 1026 (1940). This is not to say that the evidence of appellant's witnesses was not credible. It simply means that the judge may, and did, attach greater weight to that of his expert than to the lay witnesses. The record does not justify our finding that the decree is contrary to a preponderance of the evidence unless, as appellant argues, the court erred in considering the expert's report at all.

## II.

Appellant next contends that the trial judge abused his discretion in appointing an expert witness. We do not agree.

At the time the probate judge announced his decision to appoint a handwriting expert pursuant to Rule 706, Uniform Rules of Evidence, appellant filed a written objection stating four grounds for opposing the appointment. She maintained that as no witness refuted the overwhelming evidence that the writing was genuine, the court had no basis

to suspect forgery; that there was no formal objection to the probate of the will by any person with standing to do so; and "for the reason that the petitioner will not be allowed to cross-examine the person making the examination and such examination has not been afforded by the court." We find no merit to these arguments.

Although the trial judge did not specifically state the basis for his suspicion, it appears from the report of the expert that it had a reasonable basis. The trial judge had before him the proffered will and numerous known specimens of the deceased's signature and handwriting. During the trial the probate judge freely exercised his prerogative to interrogate the witnesses. In his questioning of the bankers it is clear that he felt that they had placed too much emphasis upon a signature card on file, and on matching only the signature part of the proffered will. It is clear that he felt they had given too little attention to a comparison of the specimens of the deceased's handwriting to the text of the will. At the conclusion of the hearing he asked counsel if anyone had submitted the document to a handwriting expert for analysis and indicated that he was considering doing so on his own motion as provided in Rule 706. We cannot conclude that the trial judge abused his discretion in exercising his right under Rule 706 to appoint the expert.

Nor can we agree that appellant was not afforded the right to cross-examine the court appointed expert, as she alleged in her objection to the appointment and has argued here on appeal. After the expert's report was filed she was fully offered that opportunity by the trial court and declined to exercise it.

On August 12th the court appointed Charles C. Scott of Kansas City, Missouri, a handwriting expert of his own selection. Mr. Scott was informed of his duties by the court in writing and a copy of those instructions was filed with the clerk as provided in Rule 706. The court also provided to Mr. Scott the proffered will and nineteen known specimens of the handwriting and signature of the deceased introduced at the hearing.

On August 31st Mr. Scott reported in writing to the court that the proffered will was a "crude, clumsy imitation of Blue's handwriting" fabricated by someone other than the deceased. He described the various tests he had made and the reasons for having reached that conclusion. The court furnished all interested parties with a copy of the report and all other correspondence and documents in connection with it.

On September 4, 1981 the probate judge directed that the expert's report be made part of the record, informing all interested parties that they would be afforded the right to reopen the record for the taking of evidence from other experts of their own choosing and/or to take the deposition of Mr. Scott. He requested that counsel inform him of their intention as to deposing Mr. Scott or calling other experts by September 14th.

On September 11th appellant filed her motion asking the court to extend the time for her decision as to taking Scott's deposition or reopening the record to September 25th. The court granted that request. She also petitioned the court to enter into the record the amount charged by Mr. Scott for his examination and this also was granted. She also petitioned "in the event she decided to take the deposition of Mr. Scott" the cost of the deposition be borne by the estate. We conclude that she was afforded the right to cross-examine the witness, was made fully aware of that right and given ample opportunity to exercise it. She elected not to do so.

A careful review of the record discloses that at no time after September 4th or in any subsequent proceeding did the party interpose an objection to the action of the trial judge in making the expert's report a part of the record or of his considering it. That issue cannot be raised for the first time on appeal. *State Highway Commission v. Lone Star, Inc.,* 4 Ark. App. 103, 628 S.W.2d 23 (1982).

Mr. Scott's report did contain extra-judicial statements received in evidence to prove the truth of the matters asserted. Clearly the document was objectionable hearsay

under Rule 801, Uniform Rules of Evidence. That hearsay is objectionable, however, does not necessarily mean that it is incompetent. Absent an objection, hearsay, if relevant, is competent and entitled to consideration by the trial court and by a reviewing court in support of its findings. *Rinke* v. *Shackleford*, 248 Ark. 941, 455 S.W.2d 83 (1970); *McWilliams* v. *R & T Transport, Inc.*, 245 Ark. 882, 435 S.W.2d 98 (1968).

## III.

The appellant next contends that the court erred in directing the administrator to take an adversary position to the admission of the proffered will. She argues that the record shows that under the facts of the case the estate would escheat to the state since no heirs had been located. She argues that the state had filed an objection to the probate of the will but later had withdrawn it and had made known to the court that it had no further objection to the petition to probate the will. She cites no cases in support of her position and does not present a persuasive argument. The record does not clearly establish an escheat and no action designed to effect escheat had been initiated under Ark. Stat. Ann. § 61-150 (Repl. 1971) or § 62-1801, *et seq.* (Repl. 1971). Appellant testified that the deceased had once been married and had two children. A probate judge has a higher duty to preserve the interest of all those who are or might become beneficiaries of a decedent's estate. The probate judge made it clear in the record that he was taking that action only in pursuit of the truth and "historically, courts have always found that the best way to get to the truth" was to have adversaries "ferreting it out from what the other presents." We find no error in the court's action.

## IV.

Appellant argues that the trial court erred in not considering the *animus testandi* expressed by the decedent. There was testimony from the appellant, her parents and another witness that the deceased had stated that he intended that appellant receive all of his estate at his death. It is well settled that a will, such as that offered here, must be in writing. The testamentary intent of the deceased, no matter

how often expressed, does not dispense with that requirement.

On November 27, 1981, the appellant entered into an agreement with T. J. Hively, prosecuting attorney for the Sixteenth Judicial District, in which the parties agreed to a settlement of their disputed claims. This agreement provided that the administrator of the estate should be paid an additional fee of $3,000 and that the remainder of the estate would be divided equally between the appellant and the State of Arkansas. It was further agreed that they would present the agreement to the probate court for its approval and if approved the appellant agreed to dismiss her appeal. On January 5, 1982 the administrator filed his petition stating that no known heirs had been located and that the estate should escheat to the state. The petition then set forth the agreed settlement of November 27, 1981. The court denied the petition finding that the amount of the settlement was in excess of what was reasonable under the circumstances and that it would not be in the best interest of the estate that it be approved. The appellant contends that the court erred in its order. In support of her position she argues the well established principle that the law favors and encourages settlements of disputes among parties.

It is to be noted that the agreement was made expressly subject to approval by the court. The court found that the settlement was not fair and equitable and not in the best interest of the estate and denied it. We find no abuse of discretion in that order.

While the parties might make such division of their distributive share of the estate after an order of distribution has been entered and complied with, we are cited no authority which compels a probate court to order distribution in accordance with agreements which he finds unfair.

Affirmed.

GLAZE and CLONINGER, JJ., dissent.