SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-14-1096

| | |
|---|---|
| | Opinion Delivered November 30, 2016 |
| JEANNIE SHERMAN<br>APPELLANT | APPEAL FROM THE CROSS COUNTY CIRCUIT COURT [NO. 19-DR-12-81-4] |
| V. | |
| RAYMOND BOECKMANN<br>APPELLEE | HONORABLE KATHLEEN BELL, JUDGE |
| | AFFIRMED IN PART; REVERSED IN PART; AND REMANDED IN PART |

**BRANDON J. HARRISON, Judge**

This case is a companion case to *Sherman v. Boeckmann*, 2016 Ark. App. 567, also handed down today. These two appeals arise out of contentious and protracted divorce litigation between appellant Jeannie Sherman and appellee Raymond Boeckmann. In this appeal, Sherman argues that the circuit court erred in its rulings concerning her postdecree use of money awarded to her in the decree. We affirm in part, reverse in part, and remand in part.

The circuit court entered its decree granting a divorce and dividing the marital property on 30 September 2013. Each party was awarded one-half of the stock in four family business corporations the parties agreed are marital property: B and L Properties, Inc.

(B&L); L and K Properties, Inc. (L&K); Boeckmann and Sons, Inc. (Sons Inc.); and Logan Centers, Inc. (Logan or Logan Center). Prior to the litigation, Boeckmann owned 100 percent of the stock in Sons Inc; Sherman owned 100 percent of the stock in Logan Center; and each party owned 50 percent of the stock in L&K and B&L. The court also equally divided approximately sixteen banking accounts, including some owned by the parties' corporations. The court's decree was later amended to incorporate exhibits showing the total account balances of approximately $3.6 million as of the first day of trial. The two Logan Center accounts had a combined balance of $1.6 million.

On 29 October 2013, Boeckmann filed a verified petition for contempt citation alleging Sherman had violated the mutual restraining order and the temporary order by withdrawing approximately $1.1 million from the Logan Center account for her personal use. Among the withdrawals was one for approximately $560,000 paid to the Internal Revenue Service, a withdrawal of $126,000 for payment of state taxes, and another withdrawal of $350,000 to Sherman herself. Boeckmann sought a distribution of a like amount to himself, as well as one-half of the increase in value of an investment account solely in Sherman's name and valued at over $1 million. Sherman responded to the petition, asserting that the circuit court was without jurisdiction to control the actions of Logan Center because it was a separate entity and not a party to the action.

On 20 November 2013, Boeckmann filed another petition for contempt citation contending that Sherman had failed to comply with the court's order amending the decree that required her to account for certain funds withdrawn from the Logan Center accounts

SLIP OPINION

and to pay Boeckmann approximately $94,000 from the Logan Center accounts and her personal funds.

The court held a hearing on November 25 addressing predecree petitions. The court also addressed some issues raised in Boeckmann's postdecree petitions.

Boeckmann filed yet another petition for contempt on December 31, contending that Sherman had removed another $490,000 from Logan Center accounts in Wynne banks and used the funds to purchase a certificate of deposit. Sherman was also alleged to have opened other accounts on behalf of Logan Center at a Batesville bank to which Boeckmann did not have access. It was also claimed that Sherman withdrew an additional $633,000 from the Logan Center accounts for her own personal use or to place in another account. Boeckmann sought an accounting and access to any new Logan Center accounts.

Sherman responded to this petition, again asserting that the court lacked jurisdiction to control Logan Center's activities, including limiting her salary from the corporation; that the court did not divide Logan Center's cash or other assets; and that Boeckmann's remedy was to bring a shareholder action instead of a contempt action in the divorce case.

On 24 January 2014, Boeckmann filed still another contempt petition that overlapped with some of the allegations contained in the December 31 petition. There was an allegation that Sherman had removed approximately $638,000 from a marital investment account and transferred it to a checking account in her sole name on 10 December 2013. Another allegation was that Sherman had increased her salary to $18,000 per month, instead of the $12,000 amount that the court had set in a temporary order during the pendency of the divorce.

In her motion to dismiss the January 2014 petition, Sherman argued that the temporary order and the ex parte restraining order prohibiting either party from disposing of any property were superseded by entry of the divorce decree, which did not contain such an injunction. She further argued that she should not be held in contempt for transferring money from one Logan Center account at one bank to a new Logan Center account at a different bank. Responding to Boeckmann's allegations concerning her payment of salary to herself, Sherman argued that the court lacked authority to control the day-to-day activities of Logan Center and that, upon entry of the decree, there was no further order limiting expenses to the ordinary course of business. Sherman also asserted that there was a distinction between Boeckmann's owning one-half of the stock in Logan Center and his owning one-half of the corporation's assets.

On 5 February 2014, the court entered its order from the 25 November 2013 contempt hearing. The court asked for briefs on whether it lacked authority to hear contempt matters because Sherman had filed a notice of appeal. It also took under advisement the issue of what to do about Sherman's tax payments from the Logan Center accounts. The court found Sherman in contempt because she had spent approximately $32,000 from Logan Center accounts that the court found not to be in the ordinary course of business. Sherman was ordered to pay Boeckmann one-half of the amount from her personal funds. Sherman was also found in contempt for paying herself more than $12,000 per month. Although Sherman was ordered to pay Boeckmann one-half of any sums she was paid over $12,000 per month, no reimbursement amount was set. The court ordered that neither party transfer funds from one account to another and that Sherman was

prohibited from treating the Logan Center account as her personal account. She was also ordered to take all necessary steps to have Boeckmann's name placed on all Logan Center accounts. Boeckmann was awarded his attorney's fees and costs; however, the amounts were not specified and were to be based on a later submission of time records by Boeckmann's attorney. Sherman timely filed a notice of appeal from this order.

In late February 2014, the court held a hearing on Sherman's motion to dismiss and Boeckmann's two petitions for contempt. From the bench, the court dismissed all of the allegations that occurred as a result of the bench ruling from the November 2013 hearing. The court issued its letter opinion disposing of the remaining issues in March 2014. The court noted that it had previously approved Sherman's payment of her taxes from the Logan Center account as being in the ordinary course of business. As a result, the court ruled that it could not now hold Sherman in contempt. The court found the funds utilized by Sherman were marital property. The court required Sherman to reimburse the Logan Center for various sums aggregating approximately $504,000 from her personal funds. Boeckmann was awarded judgment against Sherman of approximately $439,000, representing sums Sherman had previously been ordered to pay. Sherman was also ordered to remove her children as signatories from any bank accounts, certificates of deposit, or similar assets. As a sanction for the February 5 contempt findings, Sherman was ordered to pay Boeckmann's attorney's fees in the sum of $20,000 from her personal funds.

Prior to entry of an order from the February 2014 hearing, the court addressed another letter to the attorneys, ruling that unless specified otherwise, Boeckmann was entitled to an offset for any marital funds Sherman used for her personal benefit. The court

found that approximately $58,000 in expenditures had been made for Sherman's personal benefit and not that of the corporation. The court further found that Sherman had used marital funds to purchase a home in Heber Springs. The court declared the house and any personal property that had been purchased with marital funds to be marital property, which the court ordered sold and the proceeds divided equally. The court declined to hold Sherman in contempt or to require reimbursement by her to the corporation. It did, however, again caution Sherman against using the Logan Center assets for her personal benefit. Sherman was also ordered to account for all expenditures made from the investment account at a Batesville bank and to repay any personal expenditures within thirty days. An order memorializing the court's rulings and incorporating the various letter opinions was entered, and this appeal followed.

On appeal Sherman argues that the circuit court lacked jurisdiction over the matter so that the order appealed from is void; that the court erred in granting judgment to Boeckmann for funds Sherman used to pay her state and federal taxes; that the court erred in controlling the action of the Logan Center, a separate entity, in four specific ways; that the court erred in ordering a house Sherman purchased after entry of the decree sold and the proceeds divided equally; that the court erred in ordering Sherman to remove her children as signatories from various bank accounts; and that the court erred in ordering her to pay Boekmann $20,000 in attorney's fees as a contempt sanction.

It has long been the rule in Arkansas that, in certain cases, a process for contempt may be used to effect civil remedies, the result of which is to make the innocent party whole from the consequences of contemptuous conduct. *Omni Holding & Dev. Corp. v. 3D.S.A.,*

*Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004); *Walker v. Fuller*, 29 Ark. 448, 469 (1874); *Pinnacle Point Props., LLC v. Metro. Nat'l Bank*, 2012 Ark. App. 268; *Butler v. Comer*, 57 Ark. App. 117, 942 S.W.2d 278 (1997); *Payne v. White*, 1 Ark. App. 271, 614 S.W.2d 684 (1981).

Arkansas law provides that all marital property shall be distributed when a divorce decree is entered, creating a bright-line rule for determination of whether property is or is not marital property. Ark. Code Ann. § 9-12-315(a) (Repl. 2015); *Page v. Anderson*, 85 Ark. App. 538, 157 S.W.3d 575 (2004). The circuit court recognized this by amending its original decree to incorporate certain exhibits listing the parties' various bank accounts and balances being divided. These marital accounts included certain accounts titled in the names of the parties' corporations. By failing to challenge the finding that these corporate accounts were marital property, Sherman has waived our review of that issue. *See Payne v. Donaldson*, 2010 Ark. App. 255, 379 S.W.3d 22.

With these principles in mind, we turn to the merits of Sherman's arguments. In her first point, Sherman argues that the circuit court lacked jurisdiction over the matter given the appeal of the decree in the companion case, resulting in the order from which this appeal was taken being void. She further argues that the court lost jurisdiction to modify its decree after ninety days had passed. We disagree. Here, the original divorce decree, entered after a lengthy and contested trial, addressed in detail the parties' marital property. The decree also stated, "[T]his Court retains jurisdiction of this matter to enter any orders in the future necessary to effect the terms of this decree." In his postdecree pleadings, Boeckmann did not simply seek to hold Sherman in contempt; he also sought relief in the form of

SLIP OPINION

distribution of sums equal to those Sherman had withdrawn from the parties' various accounts—both personal and corporate—that the circuit court had found to be marital property. Because the court was acting to carry out the division of marital property already announced in its decree, it was acting within its express reservation of jurisdiction. *Cox v. Cox*, 17 Ark. App. 93, 704 S.W.2d 171 (1986). So the Rule 60 time limits do not apply. *Id.*

Next, Sherman contends that the court erred in granting judgment to Boeckmann for her paying her "personal" income tax obligations with funds from the Logan Center. We disagree here, too. During the the divorce proceeding, the court found that Sherman's payment of her 2011 state and federal tax liability with funds from the Logan Center was in the ordinary course of business for that corporation. When Sherman again used corporate funds to pay her 2012 taxes, Boeckmann sought to hold her in contempt and for a distribution of like sums. The court adhered to its earlier ruling that the payment of taxes was in the ordinary course of business. Nevertheless, the court awarded Boeckmann judgment for approximately $345,000, representing one-half of the taxes paid.

Sherman's argument does not, in our view, appreciate the full importance of her payment of the 2012 taxes. That the circuit court found the tax payments had been made in the ordinary course of business is not pivotal; instead, we must consider the nature of the obligation, the timing of payment, and the source of money used in payment. Sherman concedes that, because Logan Center was an S corporation and she was the sole shareholder at the time, the tax obligation was her personal obligation. This obligation was also from the year the parties separated. She paid the taxes in September 2013, prior to the entry of

the divorce decree, with funds from Logan Center. Those funds were found to be marital property and Sherman does not challenge that finding. Parties to a divorce often must use marital funds to meet necessary expenses incurred while the case is pending, and the circuit judge has discretion to determine whether it was necessary to use those funds, whether the amount used was reasonable, whether fraud or overreaching occurred, and whether an offset is appropriate. *Williams v. Williams*, 82 Ark. App. 294, 108 S.W.3d 629 (2003). Here, the court found that an offset was appropriate, and we cannot say that the court's order is clearly wrong.

Sherman's third point challenges the circuit court's jurisdiction over the conduct and operation of Logan Center, a nonparty corporation, by controlling and limiting the amount of money spent by the corporation. She has four subpoints.

In her first one, Sherman argues that the circuit court erred in ordering her to reimburse Logan Center for salary paid to her in excess of $12,000 per month after the divorce. Sherman argues that the court lacked jurisdiction to control Logan Center's actions because it is a separate legal entity and not a party to this action. She further says that there was no postdecree order limiting her salary in the future. We disagree, because the circuit court limited the reimbursement to the period between the date the divorce complaint was filed and when the divorce decree was entered.

In its decree, the court ruled that Boeckmann was entitled to reimbursement for one-half of the amount that Sherman had paid herself as salary in excess of $12,000 per month. But the court did not specify an amount until the entry of its 21 May 2014 order addressing Boeckmann's postdecree petitions. The court found that Sherman was to repay

approximately $262,000 for her excess salary. By specifying the amount Sherman owed in excess salary, the circuit court was enforcing its determination, first set out in the decree, that Boeckmann was entitled to reimbursement for one-half of Sherman's "excess" salary. *Cox, supra.* Moreover, as explained in the discussion of Sherman's tax obligation, the court found that Logan Center's bank accounts were marital property, a finding Sherman does not challenge.

Sherman's second subpoint argues that the circuit court erred in ordering her to reimburse Logan Center approximately $20,000 for funds spent in the "token economy." There was testimony at the trial and the contempt hearings that Logan Center provided mental-health services to its clients. As part of these services, Logan Center set up what was referred to as a "token economy," where it would take the clients to Walmart or Sam's Club and provide them with money to spend as they wished as a reward and to teach them about the value of money. The average "token economy" payment to Walmart or Sam's Club was $200 per month. The court found that Logan Center spent more than $20,000 for this "token economy" between June and December 2013. Sherman was ordered to reimburse the corporation for this amount, less the $200 per-month average payment.

We find no error in the circuit court's ruling on this issue. These expenditures were made during the pendency of the divorce proceedings. Thus, the court could determine how marital funds were to be used and whether an offset was proper. *Williams, supra.* But this control ends when the divorce decree is entered. Because some of the expenditures were clearly made after entry of the decree, Sherman was entitled to spend her money as

she wished. We therefore remand this issue to the circuit court to determine the amount spent before the divorce decree was entered.

We take Sherman's third and fourth subpoints together. In the third subpoint, she argues that the circuit court erred in controlling the actions of Logan Center by requiring her to reimburse the corporation for approximately $162,000 she had removed from its accounts. The fourth subpoint challenges the circuit court's finding that Sherman spent approximately $58,000 in Logan Center funds for her personal benefit. We agree that the circuit court erred.

In October 2013, after the decree had been entered, Sherman withdrew approximately $633,000 from a Logan Center account in a Wynne bank. She deposited $471,000 into a new Logan Center account at a Batesville bank that same month. There was, however, approximately $162,000 unaccounted for by Sherman. She was ordered to reimburse the corporation in this amount.

Between October and December 2013, Sherman wrote checks on Logan Center accounts totaling approximately $58,000. These sums included $10,000 to Sherman herself; $37,500 to her attorney; $6,000 to her children; and the rest to pay various personal bills. The court ordered reimbursement to the corporation for these sums.

The circuit court erred in doing so. As we mentioned earlier, the court found that the parties' bank accounts—including accounts belonging to Logan Center—were marital property and that each party was entitled to one-half of the balances. Because the withdrawals occurred beginning in October 2013, after the decree had been entered, Sherman was using funds that had been awarded to her and were her separate property. *See*

11

*Page*, *supra* (holding entry of divorce decree is the clear dividing line for determining when property purchased after separation is marital property). Moreover, there was no showing that Sherman had withdrawn more than her half of the funds. Therefore, the circuit court erred in requiring her to reimburse the corporation for those funds.

The circuit court's order of the sale of Sherman's home and its contents presents a similar problem, and we hold that the court erred in ordering the sale of Sherman's home. There was testimony that Sherman had withdrawn an undetermined amount of money from a Logan Center investment account following entry of the divorce decree. She used approximately $180,000 to purchase a home and some furnishings for it in December 2013. The circuit court ordered Sherman to account for, and repay, all sums removed from this investment account. The court further ordered the house and its contents sold and the proceeds divided equally between the parties.

Again, the court erred in doing so. First, the house was not marital property, having been purchased in December 2013, at a time *after* the decree had been entered. *See Page*, *supra*. And by ordering the house sold and the proceeds divided equally, the court gave Boeckmann more than his half of the money removed from the Logan Center accounts. He had already been awarded one-half of the funds that Sherman withdrew from the Logan Center account. Sherman then used a portion of that money to buy the house. Under the court's ruling, Boeckmann will thus improperly receive one-half of the sum removed from the Logan Center account *plus* one-half of the proceeds from the sale of the house.

We disagree with Sherman's next argument—that the court erred in ordering her to remove her children as signatories from various bank accounts. The court found that all of

the parties' accounts were marital property. Sherman's failure to challenge this finding means that we are required to accept that determination. *Payne*, *supra*. Nor does she explain how she was prejudiced by the court's ruling that removed the children as signatories from those accounts. It was her burden to show that the circuit court committed prejudicial error. *Muskogee Bridge Co. v. Stansell*, 311 Ark. 113, 842 S.W.2d 15 (1992). Error that does not result in prejudice is not reversible. *Id.* Further, Sherman fails to support her argument with citations to authority, and arguments not supported by convincing legal authority will not be addressed on appeal. *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997).

Finally, Sherman argues that the court erred in directing her to pay $20,000 of Boeckmann's attorney's fees as a sanction for contempt. She cites *Applegate v. Applegate*, 101 Ark. App. 289, 275 S.W.3d 682 (2008), for the proposition that, without a valid finding of contempt, the court could not impose sanctions. We disagree, because Sherman was found in contempt in the court's February 2014 order. That order also reserved certain issues, such as the "token economy" and reimbursement for the payment of Sherman's taxes, which were later addressed in the court's May 2014 order. The February 2014 order also awarded Boeckmann his attorney's fees pending submission of the attorney's timesheets. The court finally ruled on the issue in the May 2014 order by ordering Sherman to pay $20,000 in attorney's fees.

The award of attorney's fees in a domestic-relations case is a matter within the circuit court's discretion, and there is no fixed formula for determining what constitutes a reasonable amount. *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265. An award of attorney's fees will therefore not be set aside absent an abuse of discretion. *Id.* Under these

13

circumstances, we cannot say that the circuit court abused its discretion in awarding attorney's fees to Boeckmann as a sanction.

Affirmed in part; reversed in part; and remanded in part.

ABRAMSON and KINARD, JJ., agree.

*Ford & Cook, PLC*, by: *Paul N. Ford*, for appellant.

*John D. Bridgforth, P.A.*, by: *John D. Bridgforth*, for appellee.