SLIP OPINION

Cite as 2016 Ark. App. 567

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–14–353

| | |
|---|---|
| JEANNIE SHERMAN<br><br>APPELLANT<br><br>V.<br><br>RAYMOND BOECKMANN<br>APPELLEE | Opinion Delivered November 30, 2016<br><br>APPEAL FROM THE CROSS COUNTY CIRCUIT COURT [NO. 19-DR-12-81-4]<br><br>HONORABLE KATHLEEN BELL, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Judge**

This case is a companion case to *Sherman v. Boeckmann*, 2016 Ark. App. 568, also handed down today. These two appeals arise out of very contentious and protracted divorce litigation between appellant Jeannie Sherman and appellee Raymond Boeckmann. In this appeal, Sherman argues that the circuit court erred in the division of the parties' marital property. We affirm.

The crux of the dispute is the ownership of four family business corporations the parties agreed are marital property: B and L Properties, Inc. (B&L); L and K Properties, Inc. (L&K); Boeckmann and Sons, Inc. (Sons Inc.); and Logan Centers, Inc. (Logan or Logan Center). It is the valuation and disposition of Logan that is at the heart of this appeal. Prior to the litigation, Boeckmann owned 100 percent of the stock in Sons Inc; Sherman owned

SLIP OPINION

100 percent of the stock in Logan Center; and each party owned 50 percent of the stock in L&K and B&L.

Sherman filed her complaint for divorce on 10 April 2012. Boeckmann answered and counterclaimed. In his counterclaim, Boeckmann sought a mutual restraining order because, according to Boeckmann, Sherman began removing his name from various bank accounts, both personal and corporate, almost immediately after she filed her complaint for divorce. The court entered an ex parte mutual restraining order, prohibiting the parties from disposing of any of the property belonging to the parties except in the ordinary course of business or by prior written agreement. Further, Sherman was ordered to have Boeckmann's name restored to the various accounts and to return the monies removed from those accounts since 1 March 2012 and not used in the ordinary course of business. Later, the parties were given authority to access the other party's personal accounts and the Logan and the Sons Inc. accounts for the purpose of monitoring the balances and the use of the funds. They could not write checks or otherwise withdraw funds from those accounts.

A three-day trial was held in late June 2013. The contested issues were the valuation and division of the marital property. Later, the circuit court issued a letter opinion stating that it could not use the testimony provided at trial to value the four corporations. The court asked the parties for the names of three experts to conduct another valuation.

Without having another valuation of the corporations performed, the court issued another letter opinion ordering the marital property, real and personal, sold with the proceeds divided equally between the parties. This included the parties' various personal

and corporate bank accounts. Boeckmann was given offsets for money Sherman had taken from Logan Center accounts that was not in the ordinary course of business.

After noting that it had three options concerning the division of the stock in the businesses, the court ordered the stock in all four businesses sold and the proceeds equally divided. The court concluded that it could not award each party one-half of the stock because "[t]he disdain, the hostility these parties have for each other would create an intolerable situation by having them to business [sic] with each other." The court further concluded that it could not award all of the stock to one party, with the other party to receive an offsetting amount from other marital assets, because of the lack of a proper valuation of the Logan Center.

Following the issuance of the court's letter opinion, but prior to entry of the decree, Sherman moved the court to reconsider the stock division. She argued that there was no statutory authority for the court to order a sale of the stock. She also conceded that the parties could not work together, precluding an equal division of the stock. Sherman therefore requested that the court award her all of the stock, with Boeckmann to receive a corresponding amount from the other marital assets. In response, Boeckmann argued that, if the court believed that it could not properly order the stock in the four corporations sold, the court should award each party 50 percent of the stock in each corporation.

The decree of divorce awarded each party one-half of the stock in each of the four corporations. Otherwise, the property was divided as set out in the court's letter opinion. The court later amended the decree to include the exhibits listing the parties' various accounts and the balances on the first day of trial. Boeckmann was also awarded

approximately $365,000 from the Logan Center accounts and approximately $110,000 from other joint accounts in order to equalize monies Sherman removed for her personal use without prior approval.

We dismissed Sherman's appeal of the divorce decree for lack of a final order. *Sherman v. Boeckmann*, 2015 Ark. App. 566 (*Sherman I*). We also ordered rebriefing in the companion case. *Sherman v. Boeckmann*, 2015 Ark. App. 567 (*Sherman II*). Sherman filed a petition for review of our decision in *Sherman I*. Relying on its earlier decision in *Kelly v. Kelly*, 2016 Ark. 72, 483 S.W.3d 296, the supreme court granted Sherman's petition for review, vacated our opinion in *Sherman I*, and remanded the appeal to this court for consideration of the merits. *Sherman v. Boeckmann*, 2016 Ark. 203 (per curiam) (*Sherman III*).

On appeal, Sherman argues that the circuit court erred in (1) failing to make specific findings as to the value of the four corporate entities; (2) awarding one-half of the stock in the four corporations to each party; and (3) failing to adopt the valuation of the Logan Center or seek an independent valuation. We disagree with these arguments and affirm the circuit court.

Our supreme court recently stated our standard of review:

> On appeal, divorce cases are reviewed de novo. We review the circuit court's findings pertaining to division of property and alimony and affirm them unless they are clearly erroneous or against the preponderance of evidence. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. The appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. We give due deference to the circuit judge's position to determine the credibility of witnesses and the weight given to their testimony.

*Moore v. Moore*, 2016 Ark. 105, at 4, 486 S.W.3d 766, 770 (internal citations omitted).

Sherman first argues that the circuit court erred in failing to make specific findings as to the values of each corporation. The value of marital property is a factual question. So a circuit court's valuation of property for purposes of property division will not be reversed unless it is clearly erroneous. *Poole v. Poole*, 2009 Ark. App. 860, 372 S.W.3d 420. The value of a marital asset is determined by considering all relevant evidence regarding value. *In re Marriage of Rosen*, 467 N.E.2d 962 (Ill. App. 1984); *Grasty v. Grasty*, 482 S.E.2d 752 (N.C. App. 1997); *Wallace v. Wallace*, 733 S.W.2d 102 (Tenn. App. 1987). The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. *In re Marriage of Deem*, 463 N.E.2d 1317 (Ill. App. 1984); *In re Marriage of Larkin*, 462 N.E.2d 1338 (Ind. App. 1984); *Grasty*, *supra*; *Martin v. Martin*, 358 N.W.2d 793 (S.D. 1984); *Wallace*, *supra*. The circuit court has the discretion to place a value on a marital asset that is within the range of the evidence submitted. *See Wadley v. Wadley*, 2012 Ark. App. 208, 395 S.W.3d 411.

While Sherman's argument purports to challenge the court's lack of valuation of each of the four corporations, her main focus is on the lack of valuation of Logan Center. Sherman's expert, Steve Orr, gave a liquidation value of approximately $1.2 million for the Logan Center. As the court noted in its letter opinion, Orr did not have information regarding the entire income stream of the Logan Center, and he did not review the contracts with all entities the Logan Center provided services to. As a result, the court was unable to render a decision based on Orr's opinion. Although Boeckmann proffered Cheryl Shuffield to provide valuation testimony, her testimony was excluded as a discovery sanction. In her proffered testimony, Shuffield disagreed with Orr's valuation as a liquidation value. She

valued the Logan Center at approximately $4.7 million.  She also prepared valuations for the other three corporations.

Sherman argues that there was enough evidence concerning the real property owned by the corporations for the court to value the corporations.  But the court disagreed, stating that the parties failed to present sufficient evidence as to the value of Logan Center.  Indeed, in the circuit court's view, there was no need to place values on each of the corporations because the court divided the corporate stock equally between the parties.  This distinguishes this case case from *Farrell v. Farrell*, 2013 Ark. App. 23, 425 S.W.3d 824, where the circuit court expressly made an unequal division of the stock in a closely-held corporation.  Moreover, the court was honoring the presumption that an equal division is fair and equitable. *Davis v. Davis*, 2016 Ark. App. 210, 489 S.W.3d 195; *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265.  Here, the circuit court did not err in failing to value the corporations.

Sherman's second point is that the circuit court erred in awarding each party one-half of the stock in each of the four corporations.  We disagree.  Arkansas Code Annotated section 9-12-315(a)(4) (Repl. 2015) governs this issue and provides as follows:

> (4) When stocks, bonds, or other securities issued by a corporation, association, or government entity make up part of the marital property, the court shall designate in its final order or judgment the specific property in securities to which each party is entitled, or after determining the fair market value of the securities, may order and adjudge that the securities be distributed to one party on condition that one-half (1/2) the fair market value of the securities in money or other property be set aside and distributed to the other party in lieu of division and distribution of the securities.

In *Hodges v. Hodges*, 27 Ark. App. 250, 770 S.W.2d 164 (1989), we applied the statute and pointed out that a circuit court has two options when dividing corporate stock in a divorce:

SLIP OPINION

(1) designate the specific property in stock to which each party is entitled or (2) order that the stock be distributed to one party and the other party receive one-half of the fair market value of the stock in money or other property. We specifically held that the statute did not authorize a stock sale. Awarding each party one-half of the stock in each of the four corporations is not an error. The choice is one of the court's options under the statute because it could designate the specific percentage of stock to which each party was entitled. *Hodges* also pointed out that the court could make an unequal division of the stock. 27 Ark. App. at 256–57, 770 S.W.2d at 168.

Finally, Sherman argues that absent proper evidence of the four corporations' value, the circuit court should have appointed an expert to appraise the value of the Logan Center and the other corporations. The rules of evidence empower a circuit court to appoint an expert to value an asset in reaching an equitable distribution in a divorce proceeding, Ark. R. Evid. 706(a), and call that expert as a witness in the trial. Ark. R. Evid. 706(a); Ark. R. Evid. 614(a) (court may call witness). Courts, however, "rarely call witnesses, and rightly so," because it "is hard for judges to maintain impartiality while becoming an active participant in summoning witnesses." Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 335, at 542–46 (2d ed. 1994) (*Federal Evidence*). Furthermore, the calling of a witness by the circuit court "interferes with the presentation of evidence by the parties, depriving them of a portion of the control which the adversary system normally confers upon them." *Federal Evidence* § 366, at 737. In any event, the decision to appoint an expert and to call that expert as a witness are matters left to the sound discretion of the circuit court. *Federal Evidence* § 367, at 741; *see Wilson v. Kemp*, 7 Ark. App. 44, 644 S.W.2d 306

(1982) (judge has discretion to appoint an expert). Here, nothing suggests that the circuit court abused its discretion by not appointing an expert to value the four corporations. The circuit court was certainly not required, as Sherman argues, to appoint an expert to value the four corporations.

Affirmed.

ABRAMSON and KINARD, JJ., agree.

*The Law Offices of Ford, Troutt & Cook*, by: *Paul N. Ford*, for appellant.

*John D. Bridgforth, P.A.*, by: *John D. Bridgforth*, for appellee.