Cite as 2020 Ark. App. 319

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-19-546

|  |  |
|---|---|
| DOMINIKA SZWEDO<br><br>APPELLANT<br><br>V.<br><br>ARTHUR CYRUS<br><br>APPELLEE | **Opinion Delivered:** May 27, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-15-5023]<br><br>HONORABLE VANN SMITH, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

This paternity and custody case returns to us. *See Szwedo v. Cyrus*, 2019 Ark. App. 23, 570 S.W.3d 484 (*Szwedo I*).[1] Dominika Szwedo brings this appeal from the Pulaski County Circuit Court's orders modifying custody and awarding the parties joint physical and legal custody of the parties' children to Szwedo and Arthur Cyrus. She also appeals evidentiary rulings made by the court. We affirm.

### I. *Background*

As we explained in our previous opinion, the parties met in 2003 while attending medical school in Poland and soon began dating. After graduation, both Cyrus and

---

[1]In *Szwedo I*, we affirmed the circuit court's order for appellee Arthur Cyrus to pay $8,333 a month in child support. We remanded the circuit court's decision declining Szwedo's request for approximately $450,000 in retroactive child support, holding that the law required an award of retroactive child support. We left the amount to be awarded for the circuit court to determine. We also affirmed the circuit court's rulings on the attorney ad litem's fees; the release of Szwedo's medical records; and on allowing Cyrus to travel out of state with the children.

Szwedo returned to the United States. The exact nature and extent of the parties' relationship was contentious and disputed. Szwedo gave birth to two daughters, A.R.C. in 2010 and A.G.C. in 2013. The parties' relationship ended in the summer of 2015.

In December 2015, Cyrus sued to establish paternity of the children and requested joint custody. Szwedo answered and counterclaimed for custody, to set visitation, and for child support, both current and retroactive to each child's birth. Cyrus answered the counterclaim, admitting the paternity of the children but denying the remaining allegations.

On May 15, 2017, at the beginning of the trial on the financial aspects of the case, the circuit court entered a paternity decree that found Cyrus to be the father of A.R.C. and A.G.C. and incorporated and approved the parties' agreement as to custody and visitation. The agreement provided that the parties would have joint legal custody of the children with Szwedo having primary physical custody and Cyrus having visitation. The circuit court would later issue two orders addressing the financial issues. Szwedo appealed those orders, which led to our opinion in *Szwedo I*.

While the appeal in *Szwedo I* was pending, the present round of litigation began on March 8, 2018, when Szwedo filed a motion to set aside the paternity decree alleging that Cyrus had misrepresented material facts about the nature and extent of his relationship with Mary Rooks—a woman he previously identified only as a babysitter.[2]

On April 20, 2018, Cyrus filed a motion seeking to change custody of the children to himself or, in the alternative, to joint custody. As the basis for the modification, Cyrus alleged that Szwedo failed to facilitate visitation by unilaterally changing the schedule

---

[2]Cyrus and Rooks later married.

2

without providing make-up days; that Szwedo was alienating the children by making derogatory comments about Cyrus and his wife and by failing to use Cyrus as the children's legal name; and that the children's performance in school was suffering. Szwedo responded to the motion for modification by denying the material allegations.

In June 2018, the court held a hearing where Cyrus admitted that he had misrepresented his relationship with Rooks. The court set aside portions of the paternity decree and, pending trial, reverted to the temporary custody and visitation schedule used prior to the paternity decree.

A three-day trial was held in late October 2018. Prior to trial, the attorney ad litem submitted her recommendation that the parties share joint custody of the children even though it was a high-conflict situation with a great deal of animosity between the parties. When the ad litem offered her report into evidence, Szwedo objected on multiple grounds. She was later allowed to file written objections itemizing all her grounds. Also at trial, Cyrus moved in limine to preclude Szwedo from testifying as to abuse by Cyrus. The court granted the motion but allowed Szwedo to proffer the testimony at a later date. The parties and the attorney ad litem also filed written closing arguments as well as responses to the arguments of the other parties. In those arguments, the parties summarized the evidence and made recommendations as to how the court should rule on the issues.

Cyrus argued that Szwedo's constant and increasing efforts to alienate the children should be cause alone to change custody. He cited evidence that Szwedo had interfered with his telephonic visits with the children despite advice from the therapists and the ad litem as to how to deal with the calls. He also relied on evidence that Szwedo refused to use the children's last name of Cyrus for school and extracurricular activities; that she had

made derogatory comments about Cyrus and his wife in front of the children; and that Szwedo consistently thwarted his efforts to visit the children. Cyrus noted that these behaviors had worsened and intensified since the entry of the May 2017 paternity order. Cyrus concluded by arguing that this constituted a material change in circumstances. He further argued that he should be awarded primary custody of the children with authority to make any major decisions affecting the children's health, education, or general welfare.

In her closing argument, Szwedo argued that it was undisputed that the parties have extreme levels of conflict and cannot communicate effectively and that these issues had existed since at least May 2017 when the court entered the agreed paternity order. According to Szwedo, this meant that Cyrus could not show a material change in circumstances and that his motion to modify custody should be denied. She also pointed out that Cyrus had recently signed a new employment contract requiring him to work more shifts in Texas. Szwedo argued that this would prevent Cyrus from spending half of his time in Little Rock parenting the children.

In her closing argument, the attorney ad litem said that Szwedo may have exhibited "the most blatant case of parental alienation ever openly presented in a courtroom." The ad litem took the position that the circuit court should not consider Szwedo's evidence of domestic abuse because it was based solely on Szwedo's self-serving testimony and that it predated the entry of the May 2017 order.

For her response to the other closing arguments, Szwedo repeated her argument that Cyrus had not proved a change in circumstances. She argued that the issues relied on as changes in circumstances—parental alienation, Szwedo's refusal to use the last name Cyrus for the children, and interference with visitation and travel—were all raised in the 2017

4

litigation. She also acknowledged that her allegations of abuse by Cyrus were not new, having been disclosed prior to the May 2017 order. Szwedo recommended that the court should leave custody with her and award Cyrus the specific visitation she suggested.

On January 8, 2019, the court entered what was styled as a temporary order that advised the parties that the court had determined there had been a material change in circumstances and that the parties would have joint custody with the parties alternating weeks with the children. The court withheld its final ruling pending completion of Szwedo's proffer of her testimony as to abuse by Cyrus.[3]

Our opinion in *Szwedo I* was handed down on January 23, 2019.[4] The mandate issued on February 12.

On February 15, the circuit court entered its order from the custody trial. The court agreed with the attorney ad litem's assessment that "[t]his may be the most blatant case of parental alienation ever openly presented in a courtroom." Noting that the parties did not get along, the court found that Szwedo knew no bounds when it came to alienating the children from Cyrus and that she was either unwilling or unable to control herself in a way that promoted a healthy relationship between the children and Cyrus. The court further found that although Szwedo had been hostile toward Cyrus since the case had begun, the frequency of the alienating behaviors and the negative impact it was having on the children had increased. The court concluded that there had been a material change in circumstances

---

[3]At that time, Szwedo's proffer had not been made. It was held as scheduled on February 6, 2019.

[4]See footnote 1.

since entry of the last custody order such that a modification was in the children's best interest.

After considering recommendations from both Dr. Dawn Doray[5] and the attorney ad litem, the court concluded that joint custody would be best for the children. In making such an award, the court said that it was mindful of the cases holding that an award of joint custody is reversible error when cooperation between the parties is lacking. The court admonished Szwedo that unless she quickly learned to control herself and stopped the alienating behavior, the only alternative would be to award full custody to Cyrus. The court awarded the parties joint custody on a week-to-week basis from Wednesday to Wednesday. The court exhaustively detailed the parties' visitation schedule and how the parties were to communicate and exchange the children. The court gave Cyrus the final decision on medical treatment for the children and gave Szwedo the final decision on education matters. Both were to be made in consultation and consideration of the other party's input. The court also modified Cyrus's child support to $5,250 per month. The court again admonished Szwedo that her alienating behavior must end and warned both parties that failure to follow the court's order would likely result in decreased time with the children.

Both parties filed motions asking the court to reconsider and clarify certain provision of its order. As pertinent to this appeal, Szwedo's motion argued that the court's finding of a material change in circumstances sufficient to modify custody was not supported by the evidence, which consisted of the alienating behaviors and hostility between the parties, because the court noted that those behaviors and hostility had been present since the outset

---

[5]Dr. Doray is a psychologist appointed to advise the court as to what custody arrangement would best serve the children's interest.

of this litigation in 2015. She further argued that the court failed to address the admissibility of the attorney ad litem's report.

On March 29, the court entered an order addressing the outstanding motions. The court denied Szwedo's request to reconsider its finding that a material change in circumstances had occurred because the court found the escalation of Szwedo's alienating behavior and the worsening impact her behavior was having on the children were the changed circumstances. The court also found that the attorney ad litem's report was admissible.

On April 4, the court entered an "Amended and Superseding Order" that set forth the rulings from the court's February 15, 2019 order, as modified by the March 29, 2019 order. This amended order sets forth the parties' holiday-visitation schedule in greater detail. This appeal followed.

On appeal, Szwedo argues that the circuit court erred in (1) excluding evidence of domestic abuse; (2) admitting the written report of the attorney ad litem into evidence; (3) awarding joint custody when Cyrus did not prove a material change in circumstances since the last custody order; and (4) awarding joint custody because joint custody is not appropriate and is not in the best interest of the children.

II. *Standard of Review*

In reviewing child-custody cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *See Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *See id*. This deference to the circuit court is even

7

greater in cases involving child custody as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *See id.*

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *See Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005). A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the children or when there is a showing of facts affecting the best interest of the children that were either not presented to the circuit court or were not known by the court at the time the original custody order was entered. *See id.*

Generally, courts impose more stringent standards for modifications of custody than they do for initial determinations of custody. *See id.* The reasons for requiring these more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the lives of the children and to discourage the repeated litigation of the same issues. *See id.* In order to avoid the relitigation of factual issues already decided, the courts will restrict evidence on a custodial change to facts arising since the issuance of the prior order. *See Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). The party seeking modification has the burden of showing a material change in circumstances. *See id.*

III.  *Analysis*

Szwedo first argues that the circuit court erred in excluding all evidence of domestic abuse. She relies on Arkansas Code Annotated section 9-13-101(c)(2) (Supp. 2019), which creates a rebuttable presumption that it is not in the best interest of the children to be placed

8

in the custody of an abusive parent when there is a finding that the parent has engaged in a pattern of domestic abuse.

A circuit court's decision to admit or exclude evidence will not be reversed absent a manifest abuse of discretion. *Steele v. Lyon*, 2015 Ark. App. 251, at 4, 460 S.W.3d 827, 831. The abuse-of-discretion standard "is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration." *Id.* (quoting *Gully v. State*, 2012 Ark. 368, at 10, 423 S.W.3d 569, 576). Further, this court will not reverse a circuit court's decision absent a showing of prejudice. *Id.*

Cyrus made an oral motion in limine at the beginning of trial requesting that the court exclude evidence of domestic abuse because the alleged abuse occurred prior to the May 2017 paternity decree. He also argued that the court was already aware of the allegations, which had first been raised in July 2016. Szwedo argued that the allegations had not been previously litigated, only tangentially raised at prior hearings. She further argued that issues of abuse are always relevant because under section 9-13-101(c), the court must consider the effects of domestic violence on the best interest of the children, and there is a rebuttable presumption that children should not be placed in the custody of a person who has engaged in a pattern of domestic abuse.

The circuit court granted the motion in limine and refused to allow Szwedo to present evidence about abuse predating May 2017. The court ruled that the testimony was untimely in that Szwedo had several opportunities prior to entry of the agreed paternity decree to raise the issue but did not do so. The court also suggested that Szwedo had an obligation to bring such allegations to the court's attention before entering into an agreed

9

order. The court allowed Szwedo the opportunity to proffer her testimony about domestic abuse.

In her proffered testimony, Szwedo detailed ten years of violence, rape, and alienating behaviors allegedly inflicted upon her by Cyrus from 2005 through 2015. She said that she ended the abusive relationship in 2008. She also described her taking Cyrus back into her life on several occasions. She testified that both children are the product of rape. Szwedo also proffered an exhibit she had prepared documenting the history of abuse. According to Szwedo, some of the abuse occurred in front of the children. On cross-examination, Szwedo said that the relationship was consensual at one time and that she stayed in the relationship because of Cyrus's threats to kill her and take the children.

Arkansas Code Annotated section 9-13-101(c) provides, in relevant part:

If a party to an action concerning custody . . . has committed an act of domestic violence against the party making the allegation . . . and such allegations are proven by a preponderance of the evidence, the circuit court must consider the effect of such domestic violence upon the best interests of the child, whether or not the child was physically injured or personally witnessed the abuse, together with such facts and circumstances as the circuit court deems relevant in making a direction pursuant to this section.

Ark. Code Ann. § 9-13-101(c)(1).

Although the circuit court granted Cyrus's motion in limine and excluded evidence of domestic abuse, the record shows that the court nevertheless considered such evidence. As Szwedo recounts in her brief, the court heard testimony from several witnesses that Szwedo was likely abused by Cyrus and the likely effects of such abuse on Szwedo and the children. Moreover, in its February 15, 2019 order, the court made repeated references to the allegations and Szwedo's earlier attempts to present such evidence, including findings as to credibility. The court further noted that Szwedo admitted that no assaults had occurred

10

since the parties' separation in 2015. Szwedo's subargument under this point that the circuit court improperly made findings about the abuse allegations supports the conclusion that the court, in fact, considered the allegations of abuse. All section 9-13-101(c)(1) requires is that the circuit court must consider the effect of such domestic violence upon the best interest of the children. Szwedo has not shown that the circuit court failed to do so. In fact, the circuit court allowed Szwedo to make her proffer without restrictions and considered it in making its decision. Therefore, the ruling on the motion in limine is of no import.

Also, Szwedo does not explain how she was prejudiced by the court's ruling. It was her burden to show that the circuit court committed prejudicial error. *Sherman v. Boeckmann*, 2016 Ark. App. 568, at 13, 507 S.W.3d 535, 544. Error that does not result in prejudice is not reversible. *Id.* Therefore, she has not shown that the court abused its discretion in its handling of the evidence of domestic abuse.

Next, Szwedo argues that the circuit court erred in admitting the attorney ad litem's written report. She contends that a written report was outside the scope of the duties of the attorney ad litem as set forth in Administrative Order No. 15. She further argues that admission of the report denies her due process because she is unable to cross-examine the ad litem and that the report contains hearsay.

At the conclusion of the trial on October 31, 2018, the attorney ad litem offered her written report into evidence. Szwedo objected on the basis that the report was outside the scope of Administrative Order No. 15 and that admission of the report violated her due-process right to confront witnesses. The attorney ad litem argued that the supreme court's decision in *Tracy v. Dennie*, 2012 Ark. 281, 411 S.W.3d 702, resolved the issues raised by Szwedo in favor of the admission of her report. Szwedo argued that the concurring opinions

11

of Justices Baker and Goodson in *Tracy* supported her position. The court allowed Szwedo to file a written objection; she filed her written objections to over fifty specific statements in the report on various bases, including hearsay and violation of due process. In its March 29, 2019 order, the circuit court found that the report was admissible.

The circuit court was correct in its ruling. In *Tracy*, the supreme court discussed the role of the attorney ad litem in child-custody cases and held that an ad litem's report, required by Administrative Order No. 15, is admissible as a matter of law and does not violate Arkansas Rule of Professional Conduct 3.7, which prohibits an attorney from acting as an advocate at a trial in which he or she was likely to be a fact witness. There was no indication in the record before us that Szwedo sought to have the ad litem testify as a witness. Thus, Szwedo has not demonstrated that the circuit court erred. *Sherman*, 2016 Ark. App. 568, at 13, 507 S.W.3d at 544.

Szwedo also asks that we overrule *Tracy*, a precedent of our supreme court, something we cannot do. *E.g.*, *Watkins v. Ark. Elder Outreach of Little Rock, Inc.*, 2012 Ark. App. 301, 420 S.W.3d 477; *Rice v. Ragsdale*, 104 Ark. App. 364, 292 S.W.3d 856 (2009); *Breckenridge v. Ashley*, 55 Ark. App. 242, 934 S.W.2d 536 (1996). Even if we were persuaded by Szwedo's objections and arguments, we are bound by the precedent set by the supreme court in *Tracy*. *Rice*, *supra*.

Finally, Szwedo's third and fourth points challenge the circuit court's award of joint custody and equal time with the children. Those points argue that Cyrus did not prove a material change in circumstances and that joint custody is not appropriate or in the best interest of the children. We cannot say that the circuit court erred.

The circuit court found a material change in circumstances based on the increased "frequency of the alienating behaviors" and the "negative impact it is having on the children." Szwedo acknowledges that parental alienation can be grounds for a change of custody but argues that the circuit court erred in modifying custody to joint custody because the alienating behaviors she exhibited were known prior to the entry of the May 2017 paternity decree. However, she does not address the court's specific findings regarding the increased frequency and the negative impact her behavior was having on the children.

That said, the arguments lack merit. In *Hanna v. Hanna*, 2010 Ark. App. 58, 377 S.W.3d 275, we held that a circuit court did not err in considering incidents and psychological evaluations that predated the entry of the previous custody order. The circuit court found a material change in circumstances in an escalation of the "parental alienation conduct" by the mother, relying in part on incidents that occurred prior to the agreed order. The mother appealed, arguing that the circuit court erred in considering evidence that "went behind" the last order. We affirmed, noting that the evidence either was not presented to the circuit court or was not known by the circuit court when the agreed custody order was entered.

In *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007), which Szwedo cites for the standard of review but does not otherwise discuss, we held that a mother's *continuing* pattern of alienation constituted a material change in circumstances warranting a change of custody. Likewise, in *Turner v. Benson*, 59 Ark. App. 108, 953 S.W.2d 596 (1997), the mother was admonished at the time of the divorce that she was alienating the parties' son from his father. The circuit court later changed custody to the father because of a pattern of alienating behaviors similar to those alleged by Cyrus in this case—not using the father's

13

surname as the child's surname, consistently interfering with the father's visitation schedule, and making derogatory statements about the father in the child's presence.

The circuit court could properly consider the evidence of Szwedo's worsening alienating behavior and the impact that behavior was having on the children in determining whether there had been a material change in circumstances. *Hanna*, *supra*. The court found that the alienating behavior and hostility were essentially one-sided, coming from Szwedo. To accept her argument that it could not be a change in circumstances because she had always done it would reward Szwedo for her behavior the court warned against and could lead to further loss of time with the children. Therefore, we cannot say that the court clearly erred in finding a material change in circumstances.

This brings us finally to whether the circuit court erred in awarding joint custody to the parties. Szwedo makes two arguments—that a court should not award joint custody to parties who cannot cooperate and co-parent and that Cyrus does not reside in Arkansas. Neither argument has merit.

In arguing that the circuit court erred in awarding joint custody, Szwedo relies on our cases holding that it is reversible error to award joint custody when the parties lack the mutual ability to cooperate in reaching shared decisions in matters affecting the children's welfare. *See, e.g.*, *Hewett v. Hewett*, 2018 Ark. App. 235, 547 S.W.3d 138; *Li v. Ding*, 2017 Ark. App. 244, 519 S.W.3d 738; *Stibich v. Stibich*, 2016 Ark. App. 251, 491 S.W.3d 475.

However, our supreme court recently held that an argument like Szwedo's argument "does not persuade." *Pace v. Pace*, 2020 Ark. 108, at 10, 595 S.W.3d 347, 352. The *Pace* court noted that in 2013, the General Assembly amended Arkansas Code Annotated section

14

9-13-101 to announce that an award of joint custody is now "favored" in Arkansas. *Id*. The court called this change in the law "profound." *Id*.

Although *Pace* involved a modification where joint custody had already been ordered, its rationale supports the circuit court's award of joint custody in this case. Moreover, unlike the other cases in which it was found that joint custody was not appropriate, the circuit court here found that the lack of cooperation was due to Szwedo's inability or unwillingness to cooperate with Cyrus to parent their children. Again, the court found the actions to be essentially unilateral and refused to reward Szwedo for creating the situation. The court admonished Szwedo twice that she must change her behavior or risk losing time with the children.

Next, Szwedo argues that the circuit court erred in awarding joint custody to Cyrus because Cyrus does not reside in Arkansas; instead, he works in Beaumont, Texas. She notes that Cyrus is contractually obligated to work seventeen twelve-hour shifts per month, meaning that he is in Texas at least fifteen or sixteen days per month. She also points to Dr. Doray's recommendation that Cyrus should not have custody if he is not present in Arkansas. Cyrus testified that he was able to arrange his schedule so that his time with the children would be in Arkansas. Szwedo is basically asking us to reweigh this evidence in her favor. However, we will not reweigh the evidence differently than the circuit court regarding the appropriateness of joint custody and the credibility of the witnesses. *Cunningham v. Cunningham*, 2019 Ark. App. 416, 588 S.W.3d 38.

Although the circuit court could have decided to leave primary physical custody with Szwedo or award primary custody to Cyrus, we cannot conclude on this record that

awarding joint shared physical custody was clearly erroneous. *Hoover v. Hoover*, 2016 Ark. App. 322, 498 S.W.3d 297.

Affirmed.

ABRAMSON and SWITZER, JJ., agree.

*Mann & Kemp, PLLC*, by: *Angela Mann*, for appellant.

*Short Law Firm*, by: *Lee D. Short*, for appellee.